11-5452-cr
United States v. Bryant

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
_____

August Term, 2012

(Argued: December 11, 2012                     Decided: April 3, 2013)

Docket No. 11-5452-cr
_____

UNITED STATES OF AMERICA,

*Appellee*,

*-v.-*

RON BRYANT,

*Defendant-Appellant*.
_____

Before:
>           POOLER, HALL, LIVINGSTON, *Circuit Judges.*
_____

Defendant Ron Bryant appeals from a judgment of the United States District Court for

the Western District of New York convicting Bryant of one count of possession with intent to

distribute cocaine base and one count of unlawful possession of a firearm in furtherance of a

drug trafficking crime and sentencing Bryant to a total effective sentence of 81 months'

imprisonment. On appeal, Bryant argues that his conviction under 18 U.S.C. § 924(c) for

unlawful possession of a firearm in furtherance of drug trafficking is barred by the Second

Amendment because his conviction burdens his lawful right to possess a firearm for self-defense

in his home. We reject Bryant's challenge, and we join our sister circuits in holding that 18

U.S.C. § 924(c) is constitutional as applied and that the Second Amendment does not safeguard

1

the *unlawful* purpose of possessing a firearm in furtherance of drug trafficking. For the reasons stated herein and in an accompanying summary order addressing the remainder of Bryant's challenges, we AFFIRM the judgment of conviction.

AFFIRMED.

_____

MONICA J. RICHARDS, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, New York, *for Appellee*.

ANNE M. BURGER, Assistant Federal Public Defender, Rochester, New York, *for Defendant-Appellant*.

_____

PER CURIAM:

Defendant Ron Bryant ("Bryant") appeals from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*) convicting Bryant of one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and one count of unlawful possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), and sentencing Bryant to a total effective sentence of 81 months' imprisonment. We decide three of four issues in an accompanying summary order. We write here to address Bryant's argument that his conviction under 18 U.S.C. § 924(c) is barred by the Second Amendment.

Following the conclusion of trial but before sentencing and entry of final judgment, Bryant filed a motion to vacate his 18 U.S.C. § 924(c)(1) conviction for unlawful possession of a firearm. He argued that the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which had issued after the date of his conviction, required his § 924(c) conviction be vacated. Specifically, he argued that under *Heller*'s clarification of the Second Amendment, he had a right to possess the "legal shotgun" he had purchased and retained within

2

his home in order to protect himself. That motion was denied. Bryant argued below and now argues to us that "it cannot constitutionally be assumed that all such people" charged with violating 18 U.S.C. § 942(c)(1) "pose a risk of future violence." On that basis he asserts that § 924(c) is unconstitutional as applied because his conviction burdened his constitutional right to keep and bear arms in defense of his own home. We reject Bryant's challenge, and we join our sister circuits in holding that 18 U.S.C. § 924(c) is constitutional as applied and that the Second Amendment does not safeguard the *unlawful* purpose of possessing a firearm in furtherance of drug trafficking.

For the reasons stated herein and in an accompanying summary order addressing the remainder of Bryant's challenges, we AFFIRM the judgment of conviction.

I.   BACKGROUND

In March 2007, officers from the Rochester Police Department executed a search warrant for a residence at 102 Cottage Street, a home in Rochester, New York. The search recovered in the master bedroom of the residence:

> [S]even small baggies containing a white rock-like substance in an unmarked pill bottle on top of the television, approximately $83 cash next to the pill bottle, a loaded 12 gauge Remington shotgun with one round in the chamber and four rounds in the magazine underneath the bed, $700 in a phonebook in a headboard drawer, two digital scales (one in the headboard of the bed and one underneath the bed in a shoe box which also contained pieces of Bryant's mail), a bottle marked "Superior B Crystallized Powder" containing a powder or "cut" on the headboard, $1,000 in a lockbox underneath the bed, and a box of 12 gauge shotgun shells in the closet.

Appellee's Br. at 4 (record citations omitted). The search also recovered new plastic bags of assorted sizes in the basement and pieces of mail addressed to Bryant in the kitchen.

After completion of the search, Bryant, who had been in the residence when the police arrived, agreed to speak with a Rochester police officer. His statement was memorialized in writing and signed by both him and the officer. The statement reads in part:

3

I have lived at 102 Cottage Street for approximately three years. I have a roommate named VJ. His real name is Vernon Something. About a month ago VJ started selling cocaine out of my house. If VJ is not home and someone wants some cocaine I will sell that cocaine. Two months after I moved in I was robbed. That is why I have a shotgun.

All the cocaine, scales, and baking soda that was found in my room is all that I have.

Joint Appendix ("J.A.") 270. In the course of the prosecution, Bryant filed a motion to suppress this statement. The district court denied that motion, and Bryant does not challenge that disposition on appeal.

Following seizure of the drugs and the shotgun, a forensic chemist at the Monroe County Public Safety Laboratory tested the drugs and concluded that each of the seven bags contained cocaine base and niacinamide, a component of vitamin B3, and weighed in aggregate a total of 0.948 grams. A firearms examiner with the same laboratory test-fired the shotgun with the ammunition seized from the house and determined the shotgun to be operable. Bryant was indicted on two counts: (1) possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (2) possession of a firearm, namely, a Remington, Model 870 Express, 12 gauge shotgun, "in furtherance of a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1).

The case proceeded to trial in March 2008. The evidence presented against Bryant included a stipulation regarding the nature (cocaine base and niacinamide) and weight (0.948 grams) of the contents of the seven bags seized from Bryant's room, and Bryant's post-arrest statement that he lived at 102 Cottage Street, that his roommate sold cocaine, and that, when his roommate was "not home and someone want[ed] cocaine," Bryant would sell it. J.A. 120, 270.

4

During the government's rebuttal and pursuant to a waiver provision in a proffer agreement between Bryant and the government, Agent Christopher Robinson testified, *inter alia*, that he had previously reviewed with Bryant his post-arrest statement, and that:

> [Bryant] admitted that the statement was truthful and he further admitted that he was selling, what we would call narcotics, from his residence and he was using the shotgun recovered by the police department pursuant to the search warrant for protection in his narcotics selling activities.[1]

J.A. 154. On March 10, 2008, after two days of deliberation, the jury found Bryant guilty on both counts of the indictment.

At the end of June 2008, the Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Some three months later, before the district court imposed sentence on Bryant, Bryant filed a motion to vacate his conviction for possession of a firearm in furtherance of a drug trafficking crime, arguing that 18 U.S.C. § 924(c), as applied, violated his Second Amendment right, which the Supreme Court had declared in *Heller* was an "inherent right" to possess and use a firearm in defense of his own home. He argued that the "conclusion to be drawn from" *Heller* was "that any restrictions on gun possession that 'burden the right of self-defense' by imposing serious criminal sanctions for firearms possession in the home are constitutionally suspect." J.A. 314. Bryant explained that he had purchased the shotgun for protection, following a robbery at his residence. Bryant's post-arrest statement that "[t]wo months after I moved in I was robbed" and "[t]hat is why I have a shotgun" reflects this position. *See* J.A. 270. Bryant also noted that he possessed the firearm legally, that it bore a serial number, and that there was no evidence that he "brandished or even discharged" the firearm in public.

---

[1] We address the admissibility of this statement in the accompanying summary order.

The government opposed the motion to vacate, arguing that possession of a firearm in furtherance of a drug trafficking crime is not protected under the Second Amendment. The government asserted that "[i]t would be an absurd leap, both as a reading of *Heller* and as a matter of common sense, to conclude that the Second Amendment provides a right to possess firearms for *unlawful* purposes" and that "there is no basis for thinking that the Second Amendment right enshrines a right to possess firearms [for] unlawful activities."

At a hearing held to address Bryant's motion to vacate and to impose sentence, the district court denied the motion, concluding: "The Court believes that the statute is constitutional and that legislatively there is a right to impose criminal sanctions for the unlawful possession of a weapon, such as occurred in this case. . . ." The court then sentenced Bryant to 21 months' imprisonment on count one (the drug conviction) followed by a consecutive sentence of 60 months' imprisonment on count two (the firearms conviction).

The district court entered final judgment against Bryant on January 20, 2009. Bryant has timely appealed.

II.    DISCUSSION

Bryant asserts, and the government does not contest, that he lived at 102 Cottage Street for approximately three years, that he purchased the Remington shotgun a few months after he moved in because he had been the victim of a robbery, and that he started selling cocaine from his residence one month prior to the search of the premises and his arrest. It is undisputed that Bryant legally purchased the shotgun and that the shotgun was not defaced or sawed-off. As Bryant contends, there is no evidence that he ever carried, brandished, or discharged the weapon in public.

At trial, Bryant did not contest the sufficiency of the evidence to support the firearm conviction. Nor did he contest the sufficiency of that evidence in his motion to vacate his conviction. In fact, Bryant noted that "the Government's proof related to Mr. Bryant possessing the shotgun for protection during narcotics trafficking." J.A. 315. Thus Bryant does not argue on appeal that the evidence is insufficient to sustain his firearms conviction.[2] Rather, Bryant's sole argument regarding his firearm conviction is that § 924(c) "cannot withstand constitutional muster as applied" because it "bans the possession of any type of firearm, even for a legitimate purpose such as self-defense, where the individual is accused of also possessing the firearm in furtherance of a drug trafficking crime." Appellant's Br. at 50.

We therefore turn to whether § 924(c) impermissibly burdens Bryant's Second Amendment right by prohibiting his possession of a firearm in furtherance of a drug trafficking crime.

### A. CONSTITUTIONALITY OF § 924(c)

We review *de novo* a challenge to the constitutionality of a statute. *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012). In rejecting Bryant's as-applied challenge, we look first to the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), then to subsequent decisions in our Circuit, and lastly to decisions in our sister circuits that have directly resolved and likewise rejected similar challenges to the constitutionality of § 924(c).

In *Heller*, the Supreme Court concluded, by parsing the language in the operative clause of the Second Amendment, that the Amendment does "guarantee the individual right to possess

---

[2] Even if Bryant were to have advanced such a challenge, our examination of the evidence presented at trial would lead us to conclude there was sufficient evidence to support the jury's verdict with respect to the firearms charge. *See United States v. Snow*, 462 F.3d 55, 62-63 (2d Cir. 2006).

7

and carry weapons in case of confrontation," a codification, the Court said, of a "*pre-existing*" right. *Heller*, 554 U.S. at 592; *see id.* at 595 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). The Court explained that "the inherent right of self-defense has been central to the Second Amendment" and that this right attaches with particular force "to the home, where the need for defense of self, family, and property is most acute." *Id.* at 628. The "core lawful purpose" of the right to bear arms, therefore, is for "self-defense." *Id.* at 630.

The Court, however, explicitly limited this individual right by reference to other individual Constitutional rights and by reference to the Second Amendment itself. "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626; *see id.* at 595 ("Of course the right was not unlimited, just as the First Amendment's right of free speech was not."). As the Supreme Court does not "read the First Amendment to protect the right of citizens to speak for *any purpose*," so it does not "read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation." *Id.* at 595. Specifically, the Court has made clear that the right embodied in the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. The Court stated explicitly: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.

The Court further explained that, "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. We read this exegesis as an

8

implicit limitation on the exercise of the Second Amendment right to bear arms for "lawful purpose[s]," *id.* at 628, 630, and a limitation on ownership to that of "law-abiding, responsible citizens," *id.* at 635. In its subsequent decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Court substantially confirmed such limitation when it wrote that the "central holding in *Heller*" was "that the Second Amendment protects a personal right to keep and bear arms for *lawful purposes*, most notably for self-defense within the home." *Id.* at 3044 (emphasis added).

Following the Supreme Court's decision in *Heller*, our Circuit's cases have also embraced this implicit limitation. In *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), we held that "heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of *law-abiding citizens* to possess and use a firearm for self-defense (or for other *lawful purposes*)." *Id.* at 166 (emphases added). In *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), we held that New York's handgun licensing scheme did not violate the Second Amendment when that scheme required "an applicant to demonstrate 'proper cause' to obtain a license to carry a concealed handgun in public." *Id.* at 83. There we rejected the Second Amendment challenge, in part, because "[r]estricting handgun possession in public to those who have a reason to possess the weapon for a *lawful purpose* is substantially related to New York's interests in public safety and crime prevention." *Id.* at 98 (emphasis added); *see also id.* at 93 (explaining further that "some form of heightened scrutiny would be appropriate" because New York's licensing scheme "place[d] substantial limits on the ability of law-abiding citizens to possess firearms for self-defense in public").

Other circuits have addressed arguments similar to those Bryant advances, and they have rejected any contention that the Second Amendment entitles citizens to keep and bear arms "for

*all* self-protection," given that the Supreme Court has said the purpose of the right is for "*lawful* self-protection." *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009) (rejecting as-applied challenge to constitutionality of § 924(c)). "Both implicitly and explicitly, the Court made clear that its holding concerned the *lawful* possession and use of a firearm [and] . . . it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (rejecting as-applied and facial challenges to constitutionality of § 924(c)). The "Constitution does not give anyone the right to be armed while committing a felony, or even to have guns in the next room for emergency use should suppliers, customers, or the police threaten a dealer's stash." *Jackson*, 555 F.3d at 636. Congress has seen fit to make unlawful the possession of a firearm in furtherance of a drug trafficking crime, and "there is no constitutional problem with separating guns from drugs." *Id*.

In sum, given the Supreme Court's guidance, our own jurisprudence, and the persuasive authority from our sister circuits that have addressed this issue directly, we hold that the Second Amendment does not protect the *unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime and that 18 U.S.C. § 924(c) as applied in this case does not violate the Second Amendment. *Potter*, 630 F.3d at 1261; *Jackson*, 555 F.3d at 636.

Here, Bryant may have purchased and possessed the Remington shotgun for the "core lawful purpose" of self-defense, *Heller*, 554 U.S. at 630, but his right to continue in that possession is not absolute. The jury determined there was sufficient evidence to convict Bryant of drug trafficking and also to convict him of possessing a firearm in connection with that drug trafficking. Bryant does not challenge these convictions on the ground that there was insufficient evidence to support them. Thus, once Bryant engaged in "an illegal home business," *Jackson*,

10

555 F.3d at 636, he was no longer a law-abiding citizen using the firearm for a lawful purpose, and his conviction for possession of a firearm under these circumstances does not burden his Second Amendment right to bear arms.

III.    CONCLUSION

For the reasons stated herein as well as those in our accompanying summary order, we AFFIRM the judgment of conviction.