Filed 3/3/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL EDWARD GONZALEZ,<br><br>    Defendant and Appellant. | E073987<br><br>(Super.Ct.No. RIF1900678)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Peter L. Spinetta, Judge. (Retired judge of the Contra Costa Super. Ct. assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.) Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

After a police officer found him asleep in his car with a bag of methamphetamine and a loaded gun at his feet, a jury convicted Daniel Edward Gonzalez of possession of a controlled substance while armed (Health & Saf. Code, § 11370.1), being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)), and being a felon in possession of ammunition (Pen. Code, § 30305, subd. (a)). On appeal, Gonzalez challenges the constitutionality of Health and Safety Code section 11370.1, arguing the provision violates the Second Amendment by restricting a nonviolent offender's right to possess firearms.[1] We conclude the argument lacks merit and affirm.

## I

## FACTS

Because this case involves a facial challenge to the constitutionality of a statute, the underlying facts of Gonzalez's crime are not relevant. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*) ["A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual"].) For our purposes, it suffices to say Gonzalez was caught parked on the side of the road with about .6 grams of methamphetamine and a

---

[1] Unlabeled statutory citations refer to the Health and Safety Code.

loaded, operable firearm. He was convicted of three firearm-related crimes (including the violation of section 11370.1 at issue here) and sentenced to six years in prison.[2]

## II

## ANALYSIS

Section 11370.1 makes it a felony to possess certain controlled substances "while armed with a loaded, operable firearm." (§ 11370.1, subd. (a).) Gonzalez argues this provision impermissibly infringes on the Second Amendment right to bear arms because it targets nonviolent criminals—i.e., those in possession of controlled substances. To pass constitutional scrutiny, Gonzalez argues, a restriction on gun possession must be limited to "preventing violent crime." We disagree. As the United States Supreme Court explained in *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller*, at p. 626.) Because "there is no constitutional problem with separating guns from drugs" (*United States v. Jackson* (7th Cir. 2009) 555 F.3d 635, 636 (*Jackson*)), we conclude section 11370.1 does not contravene the Second Amendment right to bear arms as interpreted in *Heller*.

---

[2] After his jury trial, Gonzalez admitted having two prior strikes on his record. His six-year sentence consists of the three-year midterm for the section 11370.1 count, doubled under the Three Strikes law. The court imposed, but stayed under Penal Code section 654, sentences for the two felon-in-possession counts.

A.      *Standard of Review*

"In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions." (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 311 (*Yarbrough*); see also *Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 593 [the starting point of our analysis is a "'strong presumption of . . . constitutionality'"].) If we can "conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail." (*Yarbrough*, at p. 311.)

B.      *Section 11370.1 Does Not Violate the Second Amendment*

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In *Heller*, the Supreme Court decided whether a series of Washington D.C. laws banning the possession of operable handguns in the home violated the Second Amendment. In answering that question in the affirmative, the Court held the right afforded by the Second Amendment is not limited to the context of militia service. Rather, the Court identified the "core" of the Second Amendment as protecting "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (*Heller*, *supra*, 554 U.S. at pp. 634-635; see also *McDonald v. City of Chicago* (2010) 561 U.S.

4

742, 786 (*McDonald*) [the Second Amendment's right to bear arms also applies to states].)

But in striking down D.C.'s in-home ban, the Court emphasized that "the Second Amendment is not unlimited" and does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller*, *supra*, 554 U.S. at p. 626.) "Nothing in our opinion," the Court cautioned, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." (*Id.* at p. 626.) The Court described those types of prohibitions as "presumptively lawful regulatory measures" and said the list was intended to be exemplary, not exhaustive. (*Id.* at p. 627, fn. 26.) Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that the Second Amendment "does not imperil every law regulating firearms" and that the kind of longstanding restrictions mentioned in *Heller* remain presumptively valid. (*McDonald*, *supra*, 561 U.S. at p. 786.)

After *Heller*, federal courts developed a two-step test for assessing Second Amendment challenges. First, the court asks "whether the challenged law burdens conduct that falls within the scope of the Second Amendment's guarantee" of protecting the right of responsible, law-abiding citizens to possess firearms to protect their home. (*Gould v. Morgan* (1st Cir. 2018) 907 F.3d 659, 668-669.) If the law doesn't burden protected conduct, then it doesn't implicate the Second Amendment and the inquiry ends. If, however, the law does infringe on a law-abiding citizen's right to possess firearms to

protect their home, then the court must inquire into "the strength of the government's justification" for the law by balancing—under the appropriate level of scrutiny—the statute's objectives against the means it employs to accomplish those ends. (*Ezell v. City of Chicago* (7th Cir. 2011) 651 F.3d 684, 703 [the rigor of the means-end review is dependent on "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right"].)

Gonzalez's constitutional challenge doesn't get past the first step and into means-end scrutiny. As noted, section 11370.1 makes it a felony to possess certain controlled substances (including methamphetamine) while "armed with" a loaded, operable firearm, meaning the gun is "available for immediate offensive or defensive use." (§ 11370.1, subd. (a).) Based on the provision's legislative history, California courts have concluded the purpose of section 11370.1 is "to protect *the public and law enforcement officers* and ""'stop the growing menace from a very deadly combination—illegal drugs and firearms.'"" (*In re Ogea* (2004) 121 Cal.App.4th 974, 984 (*Ogea*), italics added, quoting *People v. Pena* (1999) 74 Cal.App.4th 1078, 1082.)

While the Supreme Court has not yet delineated the precise scope of the Second Amendment, it has made abundantly clear that its protections inure to the benefit of law-abiding citizens only. (See *Jackson* , *supra*, 555 F.3d at p. 636 ["The Court said in *Heller* that the Constitution entitles citizens to keep and bear arms for the purpose of *lawful* self-protection, not for *all* self-protection"].) We are aware of no court decision holding that

6

the United States Constitution protects a right to carry a gun while simultaneously engaging in criminal conduct, as Gonzalez was found guilty of here.

And though we are also aware of no court to have considered whether section 11370.1 violates the Second Amendment, the law in this area is clear. A large body of federal and out-of-state cases have upheld the constitutionality of similar drug-related firearm restrictions. For example, in *United States v. Greeno* (6th Cir. 2012) 679 F.3d 510, the Sixth Circuit upheld the constitutionality of a sentence enhancement penalizing carrying a dangerous weapon during the commission of a drug offense. The court concluded the enhancement was "consistent with the historical understanding of the right to keep and bear arms, which did not extend to possession of weapons for unlawful purposes," as any holding to the contrary "would suggest that the Second Amendment protects an individual's right to possess a weapon for criminal purposes." (*Id.* at p. 520; see also, e.g., *United States v. Bryant* (2d Cir. 2013) 711 F.3d 364, 369 (*per curiam*) [recognizing "an implicit limitation" on the exercise of the Second Amendment right to bear arms "for 'lawful purpose[s]'" in rejecting a Second Amendment challenge to a federal law criminalizing the possession of a firearm in furtherance of a drug trafficking crime]; *Jackson*, *supra*, 555 F.3d at p. 636 [same]; *United States v. Potter* (9th Cir. 2011) 630 F.3d 1260, 1261 [same].) In *People v. Cisneros* (Colo.Ct.App. 2014) 356 P.3d 877, the Colorado Court of Appeals upheld a similar enhancement in their penal code, reasoning that because the law penalizes possession of a firearm "in connection with a

person's commission of a felony drug offense," it "does not apply to law-abiding citizens and, thus, does not infringe on the Second Amendment right to bear arms." (*Id.* at p. 887.)

Chief Judge Easterbrook underscored the validity of drug-related firearm restrictions with the following hypothetical: "Suppose a federal statute said: 'Anyone who chooses to possess a firearm in the home for self-protection is forbidden to keep or distribute illegal drugs there.' Such a statute would be valid . . . . And if Congress may forbid people who possess guns to deal drugs, it may forbid people who deal drugs to possess guns. The statements 'if you have a gun, you can't sell cocaine' and 'if you sell cocaine, you can't have a gun' are identical." (*Jackson*, *supra*, 555 F.3d at p. 636.) This reasoning applies equally to section 11370.1.

Gonzalez urges us to depart from decades of well-settled Second Amendment precedent and apply the reasoning from the dissent in *Kanter v. Barr* (7th Cir. 2019) 919 F.3d 437 (*Kanter*) to our analysis of section 11370.1. *Kanter* involved a Second Amendment challenge to the federal and Wisconsin felon-in-possession laws. The defendant, who had been convicted of mail fraud for falsely representing that his company's therapeutic shoe inserts were Medicare-approved and billing Medicare accordingly, argued his status as a nonviolent offender with no other criminal record made the dispossession statutes unconstitutional as applied to him. The majority upheld the statutes, concluding felons are categorically excluded from the scope of the Second Amendment. Then-Judge (now Justice) Amy Coney Barrett dissented, arguing the historical record instead revealed that the Framers intended to restrict firearm possession

8

only when doing so was *necessary to protect the public safety*. (*Kanter*, at p. 452 (dis. opn. of Barrett, J.).) In her view, the dispossession statutes' categorical application to *all* felons was "wildly overinclusive" and, "[a]bsent evidence that Kanter would pose a risk to the public safety if he possessed a gun, the governments cannot permanently deprive him of his right to keep and bear arms." (*Id.* at pp. 466-469.)

We decline to apply this approach to dispossession laws to our analysis of section 11370.1. First of all, it represents a dissenting or minority view of the court. The majority view—which is consistent with California's approach—is that applying dispossession laws to a nonviolent felon does not violate the Second Amendment. (*Kanter*, *supra*, 919 F.3d at p. 451 (dis. opn. of Barrett, J.); *People v. Delacy* (2011) 192 Cal.App.4th 1481, 1486.)

Second, even if Judge Barrett's approach were the majority view on the issue, that issue is meaningfully distinct from the one we face here. Unlike section 11370.1, dispossession laws prohibit individuals from possessing firearms in the future based on their *past* criminal conduct. Section 11370.1, in contrast, prohibits individuals from possessing firearms while *simultaneously* committing criminal activity. Kanter, the convicted nonviolent felon, could at least argue that if he were allowed to possess firearms, he would use them for a lawful purpose (e.g., defense of the home or certain military purposes). Gonzalez cannot make that argument. Instead he seeks to validate his possession of a gun for an unlawful purpose, something on which Second Amendment

9

jurisprudence, for all its murkiness, is quite clear. There is no constitutional right to carry a gun while committing a crime. (*Heller*, *supra*, 554 U.S. at p. 635.)

Plus, the type of challenge that was at issue in *Kanter* matters. Because Kanter brought an as-applied challenge, the court was required to consider the fact his crime of mail fraud involved no violence or threat to public safety. But here, because Gonzalez brings a facial challenge, we must consider all conceivable ways in which a person could violate section 11370.1. (*Yarbrough*, *supra*, 169 Cal.App.4th at p. 311; *Tobe*, *supra*, 9 Cal.4th at p. 1084.) Thus, the fact Gonzales's conviction did not involve violence is beside the point. We can easily imagine scenarios where someone who is armed with a gun while in the process of committing a drug offense is more likely to engage in gun violence than a person who committed mail fraud in the past.

This is because, as the People correctly point out, it is reasonable to assume a person armed with a loaded, operable firearm during the commission of *any* crime may be willing to resort to use of that weapon to avoid arrest and—in the case of section 11370.1, specifically—to maintain possession of their illicit stash. It is also reasonable to assume that some people who have controlled substances like methamphetamine also abuse those drugs, making their immediate access to a loaded, operable firearm more of a threat to public safety than someone like Kanter—who isn't in the process of committing a crime. (See generally *United States v. Yancey* (7th Cir. 2010) 621 F.3d 681, 686 [upholding the constitutional validity of a statute prohibiting drug abusers from possessing firearms based in part on "studies [that] amply demonstrate the connection

10

between chronic drug abuse and violent crime"].) Indeed, the potentially "deadly combination" of illegal drugs and firearms is precisely what the Legislature intended to address by enacting section 11370.1. (*People v. Pena*, *supra*, 74 Cal.App.4th at p. 1082 [observing proponents of section 11370.1 "noted that armed controlled substance abusers posed a threat to the public and to peace officers"]; see also *Ogea*, *supra*, 121 Cal.App.4th at p. 979 [concluding violations of section 11370.1 are excluded from the list of "nonviolent drug possession offenses" subject to treatment under Prop. 36].) As the Supreme Court has recognized, "drugs and guns are a dangerous combination." (*Smith v. United States* (1993) 508 U.S. 223, 240.)

And finally, even if Gonzalez could persuade us to follow the *Kanter* dissent, his challenge to section 11370.1 would still fail. Though Judge Barrett takes issue with disarming a person based solely on "their status as [a] felon[]," she *would* allow governments to disarm not just "those who have demonstrated a proclivity for violence" but also those "whose possession of guns would *otherwise threaten the public safety*." (*Kanter*, *supra*, 919 F.3d at pp. 454, 458 (dis. opn. of Barrett, J.), italics added.) The latter category encompasses those like Gonzalez who violate section 11370.1.

Simply put, nothing in the *Kanter* dissent's approach to dispossession laws suggests the Second Amendment prevents restrictions on being armed with a gun *while committing* a crime. But more importantly, nothing in *Heller*—the relevant binding precedent—suggests the Second Amendment limits a state's ability to separate guns and

11

drugs. We therefore reject Gonzalez's facial challenge to section 11370.1 and affirm his conviction.

## III

## DISPOSITION

We affirm the judgment.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

MILLER
       Acting P. J.

MENETREZ
       J.

12