**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1153
_____

UNITED STATES OF AMERICA

v.

PEDRO RAMON PAYANO,
also known as
JOEMANUEL NUNEZ-SUAREZ,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-17-cr-0238-001)
District Judge: Honorable R. Barclay Surrick
_____

Argued: January 23, 2019

Before: JORDAN, KRAUSE, and ROTH, *Circuit Judges*

(Opinion Filed: July 10, 2019)

Abigail E. Horn     [ARGUED]
Brett G. Sweitzer
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

*Counsel for Appellant Pedro Ramon Payano*

Bernadette A. McKeon     [ARGUED]
Jennifer B. Jordan
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee United States of America*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Appellant Pedro Ramon Payano appeals his sentence on the ground that the District Court's mistaken belief as to the applicable statutory maximum constitutes plain error. In his view, this error warrants resentencing by way of analogy to

2

*Molina-Martinez v. United States* where the Supreme Court held that an incorrectly calculated United States Sentencing Guidelines range presumptively satisfies the prejudice prong of plain-error review because of its "centrality" to a district court's sentence. 136 S. Ct. 1338, 1346 (2016). We agree that there was error but decline to extend the presumption of prejudice recognized in *Molina-Martinez* to this context because a mistaken understanding about the applicable statutory range, without more, has far less bearing on the actual sentence imposed than a Guidelines-calculation error. However, because we conclude on this record that the error did affect Payano's substantial rights and without correction would seriously affect the fairness, integrity, or public reputation of judicial proceedings, we will vacate his sentence and remand for resentencing.

## I. Background

Payano is a citizen of the Dominican Republic who first came to the United States legally with his parents at age twelve. In 1998, at age eighteen, he pleaded guilty to first degree possession of a controlled substance in New York state court, and in 2001, after completing his sentence of three years to life imprisonment, he was removed based on that drug possession conviction. Although Payano illegally reentered the United States in 2012, his presence was not discovered until 2017 when a Pennsylvania state trooper pulled over his vehicle. After an extended traffic stop, the trooper obtained consent to search the vehicle and found a kilogram of cocaine hidden in an interior panel.

A grand jury in the Eastern District of Pennsylvania indicted Payano for illegal reentry, in violation of 8 U.S.C.

§ 1326, and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(II). On Payano's pretrial motion to suppress, the District Court agreed with him that the drugs found in the vehicle were fruit of an unconstitutional search because the trooper lacked reasonable suspicion to prolong the stop. The Government then dismissed the drug charge, and Payano pleaded guilty to illegal reentry. Because Payano's 1998 conviction was for drug possession and not drug distribution, it qualified under federal law as a felony, but not an aggravated felony, for purposes of the illegal reentry offense. Accordingly, Payano's plea was to a violation of 8 U.S.C. § 1326(b)(1), which applies to illegal reentry following a "felony (other than an aggravated felony)" and carries a maximum sentence of ten years, and not 8 U.S.C. § 1326(b)(2), which applies to illegal reentry following an "aggravated felony" and carries a maximum sentence of twenty years.

In anticipation of sentencing, the United States Probation Office prepared a Presentence Report (PSR). That report correctly calculated the applicable Guidelines range as 24-30 months' imprisonment and correctly listed the statutory maximum term of imprisonment as ten years. However, instead of citing § 1326(b)(1) as the offense of conviction, it cited § 1326(b)(2). Although the PSR made no reference to illegal reentry following an aggravated felony nor made mention of § 1326(b)(2)'s twenty-year maximum, the citation error was compounded when the Government argued in its sentencing memorandum seeking an upward variance that Payano had been "convicted of an aggravated felony prior to his deportation," JA 69 n.2, and when it requested at the sentencing hearing that the District Court "correct" the PSR to reflect that Payano had pleaded guilty to "aggravated reentry,"

4

carrying a twenty-year statutory maximum sentence. JA 92-93. The District Court ordered that the PSR be amended to reflect that change—a "correction" to which Payano's counsel agreed. JA 92. Neither the District Court nor the parties mentioned it again during the proceedings, but at the conclusion of the hearing, the District Court granted the Government's motion for an upward variance. It then imposed a four-year sentence, 18 months above the Guidelines range, yet well below the applicable ten-year statutory maximum and, *a fortiori*, well below the twenty-year maximum that the District Court believed applicable.

## II.   Discussion[1]

Payano argues, for the first time on appeal, that he is entitled to resentencing because the District Court plainly erred by accepting that the applicable statutory maximum was twenty, as opposed to ten, years' imprisonment.[2]   As the Government conceded at oral argument that our review is for plain error under Federal Rule of Criminal Procedure 52(b),[3]

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(e).

[2] Because we will vacate Payano's sentence, we need not address his two additional arguments on appeal: (1) that the District Court procedurally erred by not adequately explaining its upward variance, and (2) that the imposition of a four-year sentence was substantively unreasonable.

[3] In its briefing before argument, the Government took the position that Payano's argument on this point was waived rather than forfeited, and thus was not entitled to plain error

we must decide whether (1) an error occurred, (2) the error is "plain," and (3) it "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original); Fed. R. Crim. P. 52(b). If those three conditions are met, a court of appeals should exercise its discretion to correct the error if it would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). Payano has the burden of demonstrating that the four *Olano* factors are met. *Id.* at 734-35.

Here, the first two are clearly satisfied. There is no dispute that the District Court erred in finding that Payano pleaded guilty to illegal reentry following an "aggravated felony," in violation of 8 U.S.C. § 1326(a) and (b)(2), and that

---

review. Where a party "invite[s] the District Court[']s" error and the Court proceeds in reliance on that agreement, we have navigated the murky waters of forfeiture versus waiver in view of the context and extent of the affirmative representation. *Robinson v. First State Comm. Action Agency*, 920 F.3d 182, 187-89 (3d Cir. 2019) (holding appellee waived rather than forfeited its argument where it "[n]ot only . . . fail[ed] to object, [but also] specifically assented to" the error); *cf. Gov't of the V.I. v. Rosa*, 399 F.3d 283, 292-93 (3d Cir. 2005) (holding "repeated acquiescence" to an erroneous jury instruction did not rise to the level of a knowing and intentional waiver). We need not undertake that analysis here, however, in view of the Government's concession at oral argument that plain error review does apply.

the error was "plain."[4]  The question presented by this case arises at *Olano*'s third prong: whether the District Court's error "affect[ed] [Payano's] substantial rights."  507 U.S. at 732. Below, we address that issue, and because we conclude his substantial rights were affected, we then consider whether, under *Olano*'s fourth prong, the error, if uncorrected, would seriously affected the fairness, integrity, or public reputation of judicial proceedings.

A.    *Whether the Error Affected Payano's Substantial Rights*

For an error to affect a defendant's substantial rights, it must have "prejudiced [him], either specifically or presumptively," i.e., "[i]t must have affected the outcome of the district court proceedings." *Id.* at 734, 739.  Demonstrating "a prejudicial effect on the outcome of a judicial proceeding" ordinarily requires a "reasonable probability" that, but for the claimed error, "the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  But "reasonable probability" in this context "is not the same as, and should not be confused with, a

---

[4] While Payano's conviction under New York Penal Code § 220.21 constitutes a state felony, "[m]ere possession is not . . . a felony under the federal [Controlled Substance Act] CSA," *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006) (citing 21 U.S.C. § 844(a)), and because the categorical approach requires it to be a drug trafficking crime under the CSA to qualify as an "aggravated felony," 8 U.S.C. §§ 1101(a)(43); 1326(b)(2); 18 U.S.C. § 924(c)(2), Payano's 1998 conviction does not categorically constitute an "aggravated felony."

requirement that a defendant prove by a preponderance of the evidence that but for [the] error things would have been different." *Id.* at 83 n.9. Rather, as with the prejudice standard articulated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and the materiality standard under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *see Giglio v. United States*, 405 U.S. 150, 154 (1972), it means only that a defendant must "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding," *Dominguez Benitez*, 542 U.S. at 83 (citing *Strickland*, 466 U.S. at 694; *Bagley*, 473 U.S. at 682); *accord United States v. Corso*, 549 F.3d 921, 929-30 (3d Cir. 2008) (same).[5]

Here, then, Payano must show that but for the District Court's erroneous understanding of the applicable statutory maximum, the likelihood of a sentence shorter than four years

---

[5] It may be, as Justice Souter has observed, that the "use of the term 'probability' raises an unjustifiable risk of misleading courts into treating it as akin to the more demanding standard, 'more likely than not,'" and that "'significant possibility' would do better at capturing the degree to which the [error] would place the actual result in question, sufficient to warrant overturning a conviction or sentence." *Strickler v. Greene*, 527 U.S. 263, 298 (1999) (Souter, J., dissenting). For now, however, the Court and the Courts of Appeals continue to use the term, clarifying that "reasonable probability" does not mean more likely than not. *Id.*; *accord United States v. Vargem*, 747 F.3d 724, 728 (9th Cir. 2014); *United States v. Groysman*, 766 F.3d 147, 157 (2d Cir. 2014); *United States v. Carrasco*, 540 F.3d 43, 53 (1st Cir. 2008).

is "sufficient to undermine [our] confidence" in the sentencing proceeding.  *Dominguez Benitez*, 542 U.S. at 83.  Payano argues that he satisfies that standard, either because (1) the District Court's error is one that warrants a presumption of prejudice, or, alternatively, (2) the sentencing record reveals a "reasonable probability" that the error influenced the District Court.  We address these arguments in turn.

> 1.  The statutory-range error here does not give rise to a presumption of prejudice.

In *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), the Supreme Court held that miscalculation of the applicable range under the United States Sentencing Guidelines "itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."  *Id.* at 1345.  Payano asks this Court to extend that rebuttable presumption of prejudice for Guidelines-range errors to the statutory-range error here—specifically, to a district court's mistaken belief as to the applicable statutory maximum.  As the reasoning of *Molina-Martinez* highlights, however, marked differences between the relative significance in sentencing of the applicable Guidelines range and the statutory range counsel against such an extension.  The Court there explained that a presumption of prejudice "must follow" from an error related to the Guidelines range because that error is "particularly serious" considering (a) "the centrality of the Guidelines in the sentencing process," and (b) the reality that the Guidelines range has a "real and pervasive effect" upon the ultimate sentence imposed.  *Id.* at 1345-46; *see also id.* at 1341 (noting that most Courts of Appeals "have concluded that a district court's application of an incorrect Guidelines range can

9

itself serve as evidence of an effect on substantial rights"). But neither consideration pertains to the statutory range.

Unlike the Guidelines, which district courts are required to use as the "starting point" for sentencing, to "remain cognizant of . . . throughout the sentencing process," and to "explain the decision to deviate from," statutory ranges merely set the floor and the ceiling within which a district court must sentence, thereby functioning not to "anchor" the district court's discretion, but rather to limit the extent to which a district court may permissibly stray from the Guidelines range. *Molina-Martinez*, 136 S. Ct. at 1345, 1349 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007); *Peugh v. United States*, 569 U.S. 530, 537, 541 (2013)).[6]

As a result, it is no surprise that a Guidelines range and a statutory range do not have commensurate effects on the final sentence imposed. Whereas "[i]n most cases district courts . . . impose 'either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion,'" *id.* at 1346 (quoting *Peugh*, 569 U.S. at 543) (citing U.S.S.C., 2014 Annual Report and 2014 Sourcebook of Federal Sentencing Statistics S–50 (19th ed.) (Table N)), statutory ranges are generally too expansive to exert significant

---

[6] Indeed, a Guidelines range—if calculated correctly—will take account of the requirement that a Guidelines range cannot be "greater than the statutorily authorized maximum sentence." U.S.S.G. § 5G1.1(c)(1); *see United States v. Rivera-Cruz*, 904 F.3d 324, 327-28 (3d Cir. 2018).

influence over the ultimate sentence imposed.[7]  And because a mistaken belief as to the applicable statutory range is far less likely than a Guidelines-range error to affect a sentence, Payano is hard-pressed to argue that a statutory-range error is alone "sufficient to show a reasonable probability of a different outcome." *Molina-Martinez*, 136 S. Ct. at 1345.[8]

---

[7] For example, statutory ranges often cover decades and are identical across vast swaths of federal crimes. *See, e.g.*, 18 U.S.C. § 1343 (wire fraud; 0-20 years); 18 U.S.C. § 2113(a) (bank robbery; 0-20 years); 18 U.S.C. § 2339B(a)(1) (providing material support to a foreign terrorist organization; 0-20 years).  In addition, because defendants are often charged with multiple offenses for the same course of conduct, any of which district courts have discretion to impose either concurrently *or* consecutively, *see* 18 U.S.C. § 3584(a); *Setser v. United States*, 566 U.S. 231, 236 (2012), an aggregated statutory range could easily exceed a natural life span.

[8] To be clear, these differences are a product of the way our modern sentencing system has evolved.  Before the Guidelines, we had a "system of indeterminate sentencing," whereby district judges' discretion to determine the length of a defendant's period of incarceration was constrained only by the applicable statutory range, which often spanned decades. *Mistretta v. United States*, 488 U.S. 361, 363 (1989).  The "significant sentencing disparities among similarly situated offenders" that resulted from indeterminate sentencing led to the advent of the United States Sentencing Commission and its promulgation of the Sentencing Guidelines. *Peugh v. United States*, 569 U.S. 530, 535 (2013).  Initially understood to bind district courts to impose a sentence within the applicable Guidelines range, the Guidelines were intended to achieve both "uniformity" and "proportionality in sentencing through a

Indeed, no Court of Appeals to date has accepted that argument. While we are the first to consider the significance of *Molina-Martinez* for an unpreserved error concerning the statutory range, we find persuasive the decisions of those courts that predated *Molina-Martinez* but addressed this issue against the backdrop of their own Circuit's presumption of prejudice for Guidelines-range errors. *See United States v. Goodwin*, 717 F.3d 511, 520-21 (7th Cir. 2013); *United States v. Story*, 503 F.3d 436, 441 (6th Cir. 2007); *see also United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001). For instance, the Sixth Circuit found no "persuasive analogy" between a Guidelines-range and statutory- range error, explaining that while the Guidelines "guide the district court toward an appropriate sentence," statutory ranges merely "delineate[] the outer bounds of the district court's discretion in imposing a penalty." *United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013). And because an incorrect statutory range is not likely to "seriously affect the sentence a defendant receive[s]," remanding for resentencing "would be a useless exercise" absent some evidence of prejudice in the record. *Id.*

---

system that imposes appropriately different sentences for criminal conduct of different severity." *Molina-Martinez*, 136 S. Ct. at 1342 (quoting *Rita v. United States*, 551 U.S. 338, 349 (2007) (emphasis omitted)). While the Guidelines, of course, are no longer mandatory, *see United States v. Booker*, 543 U.S. 220, 244 (2005), their "centrality" to both the sentencing procedures that district courts employ and the ultimate sentences they impose continue to facilitate the uniformity and proportionality that statutory ranges alone were unable to achieve, *Molina-Martinez*, 136 S. Ct. at 1345; *see Peugh*, 569 U.S. at 536-37.

The Seventh Circuit likewise declined to extend a presumption of prejudice where the district court's sentence gave rise to "competing inferences" as to "what the sentencing judge might have done had she known that she was not bound by the ten-year minimum." *United States v. Currie*, 739 F.3d 960, 965 (7th Cir. 2014). Instead, it "order[ed] a limited remand" to determine whether there was actual prejudice, i.e., whether the district court would have imposed the same sentence absent the error.[9] *Id.* at 967; *cf. United States v. Williams*, 742 F.3d 304, 306-07 (7th Cir. 2014) (presuming prejudice and declining to issue a limited remand, in favor of a full remand, in the context of a Guidelines range error).[10]

---

[9] The statutory-range errors in *McCloud* and *Currie* differed from that present here in that they both involved a mistaken belief as to the applicable statutory *minimum*. In those cases, the district court had failed to retroactively apply the Fair Sentencing Act (FSA), as required by the Supreme Court in *Dorsey v. United States*, 567 U.S. 260, 280-81 (2012), which in each case would have lowered the applicable statutory minimum by five years. *See McCloud*, 730 F.3d at 601-02 (FSA lowered applicable statutory range from 5-40 years to 0-20 years); *Currie*, 739 F.3d at 964 (FSA lowered mandatory minimum from 10 years to 5 years). Notably, those courts declined to recognize a presumption of prejudice even though an error as to the existence or length of a mandatory minimum sentence is arguably far more prejudicial than an error as to an applicable statutory maximum that is not reached by the sentence imposed.

[10] Additionally, while the D.C. Circuit had not expressly recognized a presumption of prejudice in the Guidelines context prior to *Molina-Martinez*, its decision in *United States*

Payano's arguments in favor of extending the presumption of prejudice also are unavailing. He first contends that an erroneous statutory range is presumptively prejudicial at least in the context of 8 U.S.C. § 1326, the illegal reentry statute, because it contains a three-tiered sentencing "framework" with different statutory maxima keyed to criminal history and thus should be viewed, like the Guidelines, as "aim[ing] to embody" the sentencing factors articulated in 18 U.S.C. § 3553. Appellant's Br. 25 (quoting *Molina-Martinez*, 136 S. Ct. at 1342); *see* Tr. of Oral Arg. 1:48:00-1:49:30.[11] But each tier of that framework still covers a wide statutory range that, unlike the "set of elaborate, detailed Guidelines" considered in *Molina-Martinez*, cannot be said to narrowly tailor sentences to individual defendants. 136 S. Ct. at 1342. Second, he argues that requiring evidence of prejudice would be unfair because "sentencing courts are customarily silent" when they impose a sentence within the statutory range,

_____

*v. Watson*, 476 F.3d 1020 (D.C. Cir. 2007), also accords with our analysis. There, the district court mistakenly believed that the applicable statutory maximum was twenty as opposed to ten years, and the appellate court found plain error not by presuming prejudice but because statements in the record revealed that the district court was operating "under the misimpression [that] it was imposing a relatively lenient sentence" which "infected" the proceedings. *Id.* at 1021, 1024.

[11] 8 U.S.C. § 1326's three-tiered framework includes a 2-year statutory maximum for illegal reentry by a non-recidivist, *id.* § 1326(a)(2), a 10-year statutory maximum for illegal reentry after a felony conviction, *id.* § 1326(b)(1), and a 20-year statutory maximum for illegal reentry after an aggravated felony conviction, *id.* § 1326(b)(2).

14

Appellant's Br. 28, just as they are when a sentence falls within the Guidelines range. But again, the Guidelines range imposes a far more significant constraint because a sentencing court must explain any deviation from them. Finally, Payano asserts that an erroneous statutory maximum, like a Guidelines miscalculation, gives rise to a procedural error because it precludes a sentencing court from considering "the kinds of sentences available," as required under 18 U.S.C. § 3553(a)(3). But that argument rests on a mistaken premise because not all procedural errors are presumptively prejudicial. *See, e.g.*, *United States v. Stevens*, 223 F.3d 239, 246 (3d Cir. 2000) (declining to extend presumption of prejudice to violation of Federal Rule of Criminal Procedure 32, which requires courts to "verify that the defendant has read and discussed the PSR with counsel").

In sum, unlike an erroneous Guidelines range, an erroneous statutory range is not "itself . . . sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S Ct. at 1345. And without a presumption, a defendant must show actual prejudice to satisfy the third prong of the *Olano* test. Thus, we turn to the next question before us: whether, on this sentencing record, the possibility of a lesser sentence absent the statutory-range error is "'sufficient to undermine [our] confidence in the outcome' of [his] proceeding." *Dominguez Benitez*, 542 U.S. at 83 (citation omitted).

### 2. Payano has established actual prejudice.

In the absence of a presumption of prejudice, a reviewing court's determination as to whether a defendant has established actual prejudice on plain-error review, i.e., a

"reasonable probability" of a lower sentence, must be "informed by the entire record." *Id.* at 83; *see Molina-Martinez*, 136 S. Ct. at 1351 (Alito, J., concurring in part and concurring in the judgment) ("[T]here is no good reason to preclude defendants from showing prejudice via . . . circumstantial evidence" such as the parties' "sentencing arguments."). On this record—where the District Court sentenced Payano significantly above the top of the applicable Guidelines range, was repeatedly urged by the Government to vary upwards on account of a supposed prior "drug trafficking conviction," and itself directed the PSR be amended to reflect a twenty-year statutory maximum—we cannot be confident that the four-year sentence the District Court imposed was not affected by its mistaken belief that it was sentencing Payano for "aggravated reentry."

Prominent in the record are the Government's arguments in support of its request for an upward variance from the applicable Guidelines range. From the very first page of its sentencing memorandum, the Government pressed the point that Payano was "originally removed . . . following a drug trafficking conviction in New York." JA 67-68. It then repeatedly reinforced that erroneous assertion, arguing, for example, that a variance was warranted to "take[] into account [Payano's] unlawful return to the United States to engage in serious drug trafficking activities"; that he was engaged in "the very same behavior" that got him deported in the first place, JA 71; that Payano came back to the United States "to engage in the same drug business that caused his deportation," JA 75; and that the ten-year statutory maximum in the PSR was "incorrect[] . . . [b]ecause [Payano] was convicted of an

aggravated felony prior to his deportation," JA 69 n.2.[12]  The Government also emphasized how "serious" the prior conviction was, by noting both that "Payano was sentenced to 3 years to lifetime imprisonment with lifetime parole," JA 70-71, and that "the defendant's criminal history and current conduct demonstrate[d] a willingness to commit serious crimes and defy court orders," JA 71.

The mistaken assertion that Payano's original conviction was for drug trafficking also permeated the sentencing hearing, where the Government urged the District Court at the outset to "correct" the PSR to confirm that Payano had pleaded guilty to "aggravated reentry," JA 92-93, and argued that the upward variance was warranted because Payano "came back to the United States to engage in the very same conduct that he was found on April 3, 2017 to be engaged in, trafficking in drugs," JA 127.  At the conclusion of the hearing, the District Court granted that variance, explaining that it was warranted in light of the fact that illegal reentry is a "serious crime" made all the "more serious" given "the very nature of this situation"—"[t]he reentry after deportation and the drugs that were involved in this situation."  JA 129-30.

The Government contends that because the District Court only referenced the statutory maximum once at the sentencing hearing—and even then "only to accept the parties'

---

[12] Other examples abound.  *E.g*., JA 73 ("Because it was an aggravated felony, [Payano] was deported from the United States in January 2001."); JA 73 (arguing that Payano "knew the consequences of his behavior because he had done it and been caught before"); JA 75 ("[Payano] became an aggravated felon and was deported.").

17

representation that the PSR incorrectly stated that the statutory maximum was 10 rather than 20 years"—the error with regard to "[t]he statutory maximum penalty played no role in the court's analysis or reasoning." Gov't Br. 22-23. Rather, it contends, as the District Court "repeatedly noted" at the sentencing hearing, its decision to vary upwards and impose an above-Guidelines "sentence was driven by the defendant's [uncharged] drug trafficking activity after he returned to the United States." Gov't Br. 28.

To be sure, there were permissible bases upon which the District Court may have exercised its discretion to impose an above-Guidelines sentence. *See United States v. Berry*, 553 F.3d 273, 279-80 (3d Cir. 2009) (holding sentencing courts are entitled to rely on facts so long as they are "proven by a preponderance of the evidence"). It was entitled to consider, for example, the "conduct underlying [his] dismissed [drug distribution] count," *United States v. Baird*, 109 F.3d 856, 863 (3d Cir. 1997), which, but for the Government's decision to dismiss it after Payano's successful suppression motion, could have subjected Payano to a five-year mandatory minimum sentence—a year longer than the sentence the District Court imposed, *see* 21 U.S.C. § 841(b)(1)(B)(ii).[13] So too would it be permissible for the District Court to vary upwards based on the fact that Payano's uncharged drug trafficking conduct mirrored the conduct underlying his prior conviction, including, as stated in the PSR, that the police previously had

---

[13] In making those factual findings, the District Court relied on the testimony of Drug Enforcement Agency Special Agent Lisa Amoroso and Philadelphia Police Officer Luis Melendez regarding Payano's post-arrest statements admitting that the kilogram of cocaine found in the vehicle was his.

also seized more than a kilogram of cocaine, as well as a loaded firearm, from a "trap in the driver's side door of his vehicle," Gov't Br. 6 (citing PSR ¶ 27)—a fact to which Payano did not object. *See United States v. Pollard*, 986 F.2d 44, 46-47 (3d Cir. 1993) ("[A] sentencing court possesses great discretion in the conduct it may consider . . . even if the conduct was not proven at trial, but came from a presentence report.") (citations omitted).

These permissible considerations alone *may* have accounted for the District Court's upward variance and, to the extent they did, the District Court on remand may well opt to re-impose the same exact sentence. But against the backdrop of the "entire record," there is at least a "reasonable probability" that the four-year sentence was based on the District Court's mistaken belief as to the applicable statutory maximum. *Dominguez Benitez*, 542 U.S. at 83. And given the pervasiveness of the Government's sentencing arguments that Payano had been convicted of "drug trafficking," had pleaded guilty to an "aggravated felony," and was subject to a "maximum sentence of 20 years' imprisonment," JA 69, 71, 73, 75, 78, 92-93, we cannot be confident on this record that the District Court did not conflate the underlying drug trafficking *conduct* common to both Payano's prior and instant convictions with the belief that his prior *conviction* had been for drug trafficking, which triggered a potential sentence twice as long and thus may have informed the extent of the upward variance. Because "we cannot say with complete confidence that the court would have imposed the same sentence regardless of the [erroneous statutory maximum]," *Currie*, 739 F.3d at 966, we must conclude that the error "affect[ed] [Payano's] substantial rights," *Olano*, 507 U.S. at 732; *cf. United States v. Watson*, 476 F.3d 1020, 1024 (D.C. Cir. 2007)

19

(court had "no trouble seeing" the effect of the erroneous statutory maximum upon substantial rights where district court stated its sentence was "considerably less than the statutorily-available sentencing maximum").

      B.      *Whether the District Court's Error Would Seriously Affect the Fairness, Integrity, or Public Reputation of Judicial Proceedings*

Even though *Olano*'s first three conditions are met, this Court will only exercise its discretion to correct a forfeited error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." 507 U.S. at 736 (alteration omitted). Here, the Government has conceded that, should the Court find Payano's substantial rights affected, this standard would be met and we should remand for resentencing. That is an appropriate concession given that, upon a showing of prejudice from a statutory-range error, a defendant is in a procedural posture functionally equivalent to that of a defendant with a Guidelines-range error, where prejudice is presumed, and in the latter context, the Supreme Court has observed: "[A] reasonable citizen [would] bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018) (quoting *United States v. Sabillon–Umana*, 772 F.3d 1328, 1333-34 (10th Cir. 2014) (Gorsuch, J.)). The Court also explained that while "Rule 52(b) should be exercised 'sparingly'" for trial errors, *id.* at 1909 (quoting *Jones v. United States*, 527 U.S. 373, 389 (1999)), correcting sentencing errors "is far less burdensome than a retrial, or other

jury proceedings, and thus does not demand such a high degree of caution." *Id.*

These considerations favor remand here, where we are unable to discern on this record whether the District Court granted the upward variance based on permissible considerations or on the Government's unfounded argument that Payano's previous offense was an aggravated felony—or on both. Thus, we agree that Payano has also met his burden of showing that the statutory-range error here, if not corrected, would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

## III. Conclusion

For the foregoing reasons, we will vacate the District Court's sentence and remand for resentencing.