NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1417
_____

UNITED STATES OF AMERICA

v.

JEROME WOODS
a/k/a NAEEM a/k/a NA a/k/a YO
a/k/a NAEEM RASHID a/k/a MY MAN,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cr-00218-001)
District Judge: Honorable R. Barclay Surrick
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 1, 2019

Before: HARDIMAN, PHIPPS, and NYGAARD, *Circuit Judges*.

(Filed: January 9, 2020)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

Following a guilty plea for his role in a major drug trafficking scheme, Jerome Woods received a sentence of 228 months' incarceration. Although that sentence falls significantly below life imprisonment, the term recommended under the United States Sentencing Guidelines, Woods now appeals. He argues on appeal that the District Court committed two procedural errors when sentencing him, but neither of those grounds was preserved through objection at the sentencing hearing. In reviewing the sentence under the plain error standard, we will affirm Woods's 228-month sentence.

I

For more than a decade, Woods led a major interstate drug trafficking operation. Under that scheme, thousands of pounds of marijuana from California, Arizona, and Texas were transported to Philadelphia. Woods coordinated not only the cross-country, tractor-trailer transportation of the marijuana but also its distribution in the Philadelphia region. He also laundered some of the proceeds from that drug dealing through various transactions.

In 2016, Woods and several of his co-conspirators were indicted and detained. The second superseding indictment charged Woods with six counts, including conspiracy to distribute marijuana, aiding and abetting such distribution, attempted possession with the intent to distribute cocaine and cocaine base, and conspiracy to commit money laundering. Because those charges are offenses against the laws of the United States, the District Court had jurisdiction over this case. *See* 18 U.S.C. § 3231.

Along with several of his co-conspirators, Woods pled not guilty to those offenses, and they proceeded to trial. The stakes at trial were especially high for Woods: if a jury convicted him of all counts, the Sentencing Guidelines called for life imprisonment.

A few days into the trial, Woods and several of the co-conspirators entered into a global plea agreement with the Government. For his part, Woods agreed to a 'C plea' – a plea agreement pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(C), in which the parties agree upon the recommended sentence. Under that C plea, Woods's proposed prison term would have been 228 months. The District Court permitted Woods to enter that C plea, and it set a date for Woods's sentencing hearing, during which the District Court could accept, modify, or reject the C plea.

Before he was formally sentenced under the C plea, Woods changed his mind again. He still wanted to plead guilty, but he did not want to be bound to the previously agreed-upon sentence of 228 months. Woods moved to change his C plea to an 'open plea' – a plea in which a defendant pleads guilty but receives no assurance from the Government as to other charges, the Sentencing Guidelines range, or the recommended sentence – and the District Court granted that motion.

As expected with an open plea, the Government and Woods took different positions as to the sentence. Woods advocated for a prison term of 120 months. He had several reasons for that request. In fact, his motion presented no fewer than twenty grounds to depart or vary downward from life imprisonment to 120 months. By contrast, the Government recommended a sentence of 240 months.

The District Court held a hearing to sentence Woods. There, the District Court made clear that under the Guidelines, Woods was facing life imprisonment. Woods's counsel then withdrew several of the objections that he had made to the sentencing calculations in the Presentence Report and focused instead on five remaining objections. Counsel for the Government responded and advocated for a 240-month sentence. Woods's counsel gave a brief rebuttal, and then the District Court sustained one objection and overruled the remainder. Woods's counsel did not object, and the District Court determined that the Guidelines range did not change – Woods still faced life imprisonment. The District Court explained, however, that it would "consider several of the arguments" that Woods's counsel had raised in determining Woods's final sentence. With a final opportunity to say "whatever else [he has] to say on behalf of Woods," Woods's counsel spoke at length, touching on many of the arguments raised in the written motion. The Government's attorney then reiterated the request for a 240-month sentence based on Woods's involvement in the large-scale drug trafficking organization for approximately eleven years. In his allocution, Woods asked for a second chance and emphasized how much he would miss his eight children if incarcerated.

After those presentations, the District Court reviewed the § 3553(a) factors and sentenced Woods to 228 months – the same prison sentence contemplated by the then-withdrawn C plea. In reaching that result, without objection from Woods's counsel, the District Court explained that the sentence was "perfectly reasonable under all of the circumstances."

Woods now appeals, arguing that the District Court committed two procedural errors. First, he contends that, although his counsel did not object at the time, the District Court erred by failing to rule explicitly on the requests for downward departure that he presented in his written motion. Second, Woods contends that the District Court provided an inadequate explanation of its consideration of the § 3553(a) factors – even though (i) that analysis led to a sentence significantly less than a life sentence and (ii) Woods's counsel did not object to that analysis at the hearing. As far as relief, Woods requests that his sentence be vacated and that he be resentenced.

II

As a challenge to a final order and to a sentence, this Court has jurisdiction over Woods's appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a). In performing appellate review, the plain error standard governs because neither basis for this appeal was preserved by objection. *See* Fed R. Crim. P. 52(b); *United States v. Flores-Mejia*, 759 F.3d 253, 258 (3d Cir. 2014) (*en banc*).

For an appellant to prevail on plain error review under Rule 52(b) requires several showings. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05 (2018); *United States v. Payano*, 930 F.3d 186, 191-92 (3d Cir. 2019). First, the identified error must not have been intentionally relinquished or abandoned. *See Rosales-Mireles*, 138 S. Ct. at 1904. Second, the error must be plain, meaning it must be clear or obvious. *See id*. at 1904-05; *Payano*, 930 F.3d at 192. Third, the error must have affected the defendant's substantial rights. *See Rosales-Mireles*, 138 S. Ct. at 1904-05; *Payano*, 930 F.3d at 192. Under this third prong, a "defendant ordinarily must show a reasonable probability that,

5

but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles*, 138 S. Ct. at 1904-05 (quotation marks omitted); *see Payano*, 930 F.3d at 191-92. If those showings have been made, then the error should be corrected only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles*, 138 S. Ct. at 1905 (quotation marks omitted); *see Payano*, 930 F.3d at 191-92; *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights *may be considered* even though it was not brought to the court's attention." (emphasis added)).

## A

Woods's first challenge relates, in essence, to the level of detail provided by the District Court in ruling on Woods's motion for downward departures. Ordinarily, a district court must rule formally on the record on a motion for a downward departure. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). That general rule exists not merely out of prudence but also because appellate jurisdiction depends on whether the sentencing court ruled on the departure on legal grounds or out of discretion. *See United States v. Handerhan*, 739 F.3d 114, 121 (3d Cir. 2014); *United States v. Jackson*, 467 F.3d 834, 838 (3d Cir. 2006). Woods argues that by failing to rule expressly on his request for downward departure, the District Court committed plain error.

But the lack of an express ruling on requests for downward departures does not by itself constitute plain error. *See Handerhan*, 739 F.3d at 121 (explaining that "[t]he admonition against ambiguous rulings on downward departure requests is not ironclad"); *Jackson*, 467 F.3d at 837-39 (explaining that, in some instances, this Court can "infer that

6

[a] departure motion had been denied by the [district] court in recognition of its ability to depart had it chosen to do so"). And here, the lack of such an express ruling does not affect substantial rights, as is required for plain error. That is so because there is no reasonable probability that, but for the error, Woods's sentence would have been different. Indeed, the sentence was below Guidelines and was described by the District Court as "perfectly reasonable under all of the circumstances."

B

Woods next argues that the District Court provided an inadequate explanation of its consideration of the § 3553(a) factors by failing to explain how those factors led to his sentence. That contention similarly cannot prevail.

A district court need not mention specifically each and every § 3553(a) factor in its sentencing analysis. *See Rita v. United States*, 551 U.S. 338, 356-57 (2007); *United States v. Tomko*, 562 F.3d 558, 568-69 (3d Cir. 2009) (*en banc*) (explaining that "[a] sentencing court does not have to discuss and make findings as to each of the § 3553(a) factors if the *record* makes clear the [district] court took the factors into account in sentencing" (internal quotation marks omitted) (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). Rather, a district court need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356; *see Tomko*, 562 F.3d 568-69.

Here, the District Court did not err in its § 3553(a) analysis. The District Court explained that Woods's crime – leading a drug trafficking organization that orchestrated

the cross-country transportation of thousands of pounds of marijuana – "is most serious," but then recognized that Woods has "no real criminal history" and that the public does not need to be protected from Woods. From there, the District Court considered the sentences that the other co-conspirators received. Those explanations made clear the considerations that motivated a well-below-Guidelines sentence, and no more is required. *See Rita*, 551 U.S. at 357 (observing that "[s]ometimes the circumstances will call for a brief explanation").

III

For the above reasons, we will affirm Woods's judgment of sentence.