**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1301
_____

UNITED STATES OF AMERICA

v.

JARRELL DANIELS,
Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 2-18-cr-0411-001)
District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 6, 2022

Before: JORDAN, HARDIMAN, and MATEY, *Circuit Judges*

(Filed: September 6, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Jarrell Daniels appeals his conviction and sentence, arguing that the District Court improperly admitted evidence at his trial and applied the wrong Sentencing Guidelines range. His arguments fail to merit a new trial or resentencing, so we will affirm.

## I. BACKGROUND

On the morning of April 9, 2018, publicly mounted video cameras captured footage of a man in Elizabeth, New Jersey, as he approached another man from behind while holding a submachine gun. The gunman unleashed sixteen rounds in rapid succession before fleeing. Fortunately, when officers arrived at the scene, the victim was "visibly shaken" but otherwise unharmed; all sixteen shots missed. (App. at 75-76.) The officers recovered bullets and spent shell casings scattered nearby.

Officers searched the area and found a surveillance camera that had recorded the shooter dropping a kufi (a type of head covering) on a residential driveway as he removed some of his clothing. They found and retrieved the kufi. A few days later, law enforcement was contacted by nearby residents who had found a bag of clothing and a gun in their outdoor garbage can. The responding officers recovered a shirt, jacket, messenger bag, and face covering resembling those worn by the gunman in the video footage, as well as a pair of rubber gloves. They also found fourteen live rounds of ammunition and a submachine gun, which ballistics testing later confirmed was used to shoot the bullets recovered from the scene.

The kufi was tested for DNA. A significant share of the DNA on it came from a single person, whose DNA profile was then checked against a government database. The

search returned a match: Jarrell Daniels, who was arrested on state charges. Nearly three months later, those charges were dropped in favor of a federal indictment for knowing possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1).

The government subsequently secured a search warrant to collect a DNA sample from Daniels via buccal swab. Forensic scientists compared Daniels's DNA against DNA profiles extracted from the gun, kufi, and rubber gloves. Although those items revealed a "mixture" of DNA profiles, the analysis revealed "very strong support" for the proposition that Daniels's was among the DNA recovered from each item. (App. at 363-68, 373-76, 384-85.)

Prior to trial, Daniels moved to exclude the video footage of the shooting. The District Court denied the motion, holding that the footage was relevant, not more prejudicial than probative, and offered for a proper purpose – namely, as intrinsic evidence of the offense or as proof of a prior act.

Daniels's three-day jury trial took place the following month. The government relied heavily on the footage of the shooting, along with expert testimony about the DNA analysis of the kufi, gloves, and gun. Daniels's counsel, meanwhile, admonished the jury to remember that "this case isn't about a shooting [but] about whether somebody possessed a firearm" and that the victim was not injured. (App. at 452.) Ultimately, the jury convicted Daniels.

A presentence report was prepared. It recommended, and the District Court acknowledged, that, under the guidelines, Daniels's offense and criminal history would typically warrant a sentence of life imprisonment. Nevertheless, because the statutory

maximum sentence at the time was ten years, 18 U.S.C. § 924(a)(2) (2005),[1] Daniels's

operative guidelines recommendation was 120 months' imprisonment. Given the

severity of the offense – which was committed in furtherance of an attempted murder –

the Court decided to impose the maximum sentence. Daniels has timely appealed.

## II.    DISCUSSION[2]

Daniels raises two claims of error. First, he seeks a new trial on the grounds that

showing at trial the video of the shooting was unfairly prejudicial. Second, he says that

his sentence should be vacated because the District Court erred in calculating his

guidelines range. Neither claim is persuasive.

### A.    Admission of Shooting Video

Evidence may be excluded if its probative value is "substantially outweighed by a

danger of … unfair prejudice, confusing the issues, [or] misleading the jury[.]" Fed. R.

Evid. 403. Ahead of trial, Daniels sought to exclude the video on that basis, but the

District Court determined that the evidence satisfied the Rule 403 balancing analysis.

The Court observed that the video was "necessary to link [Daniels] to the firearm," since

it was "highly probative" of Daniels's guilt that the shooter was seen possessing the gun

near the place where it was later found, while wearing clothing – much of it found near

---

[1] The maximum sentence has since been raised to fifteen years. Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022) (codified at 18 U.S.C. § 924(a)(8)).

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

4

the gun – that DNA evidence tied back to Daniels. (App. at 14.) And the probative value of the video, reasoned the Court, would not be outweighed by any potential unfair prejudice to Daniels. The footage was not "unduly inflammatory or graphic[,]" since the victim was unharmed, and it was not likely to confuse or distract the jurors, especially if the Court gave them a limiting instruction, which it did. (App. at 14.)

"We review decisions to admit evidence for abuse of discretion, and such discretion is construed especially broadly in the context of Rule 403." *United States v. Scarfo*, 41 F.4th 136, 178 n.35 (3d Cir. 2022). "In general, a Rule 403 decision will not be reversed unless the analysis undertaken and resulting conclusion is arbitrary or irrational." *United States v. Bergrin*, 682 F.3d 261, 280 (3d Cir. 2012) (cleaned up). Daniels argues that the District Court abused its discretion by giving short shrift to the danger that the video would play on the jurors' emotions and would distract them from the issues relevant to his possession charge.

To the contrary, the District Court thoughtfully weighed the risk of unfair prejudice against the evidence's probative value. Daniels was not unreasonable in his concern that showing scenes of a gunman firing sixteen shots at a victim (albeit without hitting anyone) could have made the trial emotionally charged or pulled the jury's focus away from the key issue of firearm possession.[3] Even so, the District Court determined –

---

[3] Mitigating concerns of prejudice, the District Court gave a limiting instruction at trial, charging the jurors to consider the video only "for limited purposes" – determining possession and identifying the shooter – and to bear in mind that "the victim was unharmed and … the charges are unrelated to the firing of the gun[.]" (App. at 485.) Such instructions "are generally sufficient 'to cure any risk of prejudice[,]'" *United States*

and Daniels does not dispute – that the footage bore significant evidentiary value. Video proof of Daniels holding (and using) a gun, backed up by DNA analysis establishing that it was in fact him on the screen, was powerful proof that Daniels possessed the firearm. Daniels suggests that the government could have proven its case with just a screenshot or short clip of the footage, but he cannot establish an abuse of discretion with "a mere showing of some alternative means of proof that the prosecution in its broad discretion chose not to rely upon." *Old Chief v. United States*, 519 U.S. 172, 183 n.7 (1997). The District Court was therefore well within its discretion to conclude that any potential for unfair prejudice or confusion did not justify withholding from the jury a highly probative piece of evidence.[4] *See United States v. Buckner*, 868 F.3d 684, 688-89 (8th Cir. 2017) (no abuse of discretion in admitting "evidence that [the defendant] shot at another individual" using the gun he was charged with possessing).

### B.    Sentencing Range Calculation

Daniels next argues that his sentence should be vacated because it was based on an erroneous application of the sentencing guidelines. Because he raises that argument for the first time on appeal, we review for plain error. *United States v. Dahl*, 833 F.3d 345,

---

*v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)), and we see no reason to think the instruction was not heeded here.

[4] In any event, "[a]ny alleged error in the admission of the [footage] was 'rendered harmless' 'in light of all of the other evidence' at trial." *Scarfo*, 41 F.4th at 169 (quoting *United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002)). Daniels concedes that there "would have been more than sufficient evidence of possession" to convict him even without the full video, based on the DNA evidence and a screenshot or clip from the footage. (Opening Br. at 22.) That dooms his claim for a new trial.

349 (3d Cir. 2016). To prevail, Daniels must show (1) an error; (2) that is plain; (3) that affected substantial rights; and (4) that a failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 357. He fails to do so.[5]

It is undisputed that an error took place at sentencing. The District Court – consistent with the presentence report – initially indicated that Daniels's guidelines recommendation was life imprisonment. Although that went unchallenged at the time, both parties now agree that the Court looked to the wrong guidelines provision in those calculations. Under the correct analysis, Daniels's guidelines range would have been 235 to 293 months before considering the statutory maximum.[6]

Even so, Daniels's claim fails at the third prong of the plain-error test, because he cannot show that the error affected his "substantial rights": in other words, that there is a "reasonable probability" that he would have received a lower sentence but for the error. *United States v. Payano*, 930 F.3d 186, 192-93 (3d Cir. 2019). Since the maximum sentence under Daniels's statute of conviction was 120 months, 18 U.S.C. § 924(a)(2)

---

[5] The government argues that Daniels waived the issue – and thus cannot raise it on appeal – by accepting the District Court's guidelines calculations without objection. Daniels responds that he at most acquiesced in the Court's findings, so he merely forfeited his claim and can seek plain-error relief. Because the claim fails on plain-error review, we need not decide whether it was waived.

[6] Daniels believes the guidelines range would have been only 130 to 162 months, rejecting the government's view that he would be subject to a heightened range because the attempted murder he committed while possessing the gun was of the first degree. That is unpersuasive, since the District Court found that Daniels attempted a first-degree murder.

(2005), that duration – not life – became his operative guidelines recommendation. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). The bottom end of the guidelines ranges offered by the parties – either 130 or 235 months, *see supra* note 6 – still would have exceeded the statutory maximum of 120 months. Daniels's actual guidelines recommendation would have been 120 months in any event, so, it appears, the error had no practical effect.

Resisting that logic, Daniels asserts that the District Court erroneously "anchored" its sentencing decision to the guidelines recommendation of a life sentence. (Opening Br. at 28.) Without that misconception, he says, the Court might have been more receptive to departing downwards to a guidelines range that dipped below 120 months. But the District Court made quite clear that it was focused on the ultimate guidelines calculation of 120 months. (*See* App. at 522-23 ("[T]he guidelines range is ten years. That's it. … [T]hat's your starting point, and you may make whatever arguments you believe are appropriate.").) And it sentenced Daniels to the statutory maximum because he had committed his offense "in one of the worst ways you can violate the [felon-in-possession] statute" – possessing a gun while firing it with the intent to kill. (App. at 529-30.) Even if the District Court had initially calculated the guidelines range correctly, those considerations still would have motivated its decision. There is thus no reason to think that, but for the error, the Court would have imposed anything less than the statutory maximum sentence.

All of which is to say that Daniels's substantial rights were not affected. But even if we somehow thought there was, on this record, merit in his anchoring argument, Daniels would still fail at prong four of the plain-error analysis, since letting the ten-year sentence stand does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings that led to that sentence. If anything, given what Daniels did, one might say he is fortunate to be a poor shot and hence charged only with a firearms violation, instead of murder.

**III.  CONCLUSION**

For the foregoing reasons, we will affirm.

9