**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2713
_____

UNITED STATES OF AMERICA

v.

DUANE EUGENE CASH, JR.,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cr-00190-001)
U.S. District Judge:  Hon. Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2023
_____

Before: SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed:  October 6, 2023)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Duane Cash, Jr. appeals his conviction for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i), claiming that the statute, as applied to him, violates the Second Amendment. Because there is no plain error in allowing his conviction to stand, we will affirm.[1]

I

Cash was a member of a drug trafficking organization called "Hustlas Don't Sleep," led by his cousin, Robert Howell. In addition to recovering $16,000 from a concealed compartment in a car Cash was driving, law enforcement made a controlled purchase of cocaine from Cash at Howell's residence, where Cash resided. Law enforcement searched the home and discovered fentanyl, acetyl fentanyl, heroin, cocaine, and methamphetamine, as well as packaging materials, a blender with white residue, and a stolen, loaded pistol in Cash's bedroom. The firearm was located several feet away from the drugs and other drug trafficking materials.

Cash was indicted for drug and firearms crimes, including possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). At trial, one member of the drug trafficking organization stated that Cash kept the firearm "in his bedroom right next to his bed," and that Cash "[s]howed it off" to him. App. 135. Although he had not "known [Cash] to carry [the firearm,]" App. 133, after a robbery at the residence, "[Cash] started making sure he ha[d] [the gun] all the time," App. 135.

---

[1] Judge Matey concurs only in the judgment.

Another member remembered Cash "riding around with [the gun]" and "showing it off to us . . . gloating about it, stuff like that." App. 155. In addition, an expert testified that drug traffickers rely on firearms to, among other things, protect their drugs and money, since they mostly deal in cash and cannot rely on the police. Given that the firearm was found in close proximity to the drugs and drug trafficking materials, the firearm was stolen, there had recently been a robbery at the residence, and there was no indication that the gun was used for recreational purposes, the expert opined that Cash was using the firearm in furtherance of drug trafficking activity.

After the evidence was presented, the District Court instructed the jury that:

> [p]ossession "in furtherance of" means [] for the purpose of assisting in, promoting, accomplishing, advancing[,] or achieving the goal or objective of possession with intent to distribute fentanyl and/or cocaine. Mere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime.

App. 208.[2] The Court further explained that "the [G]overnment does not have to prove that [Cash] physically held the firearm," so long as "the firearm was within his control."

---

[2] The District Court identified the following factors the jury could consider to determine whether possession of a firearm furthers a drug trafficking crime:

> [t]he type of criminal activity that is being conducted; the accessibility of the firearm; the type of firearm; whether the firearm is stolen; whether the defendant possesses the firearm legally or illegally; whether the firearm is loaded; the time and circumstances under which the firearm is found; and proximity to drugs or other profits.

App. 208.

App. 209. The jury found Cash guilty on all counts and he was sentenced to a total term of 180 months' imprisonment, which included a consecutive sixty-month term of imprisonment for his § 924(c) conviction.

Cash appeals.

## II[3]

Cash asserts that his § 924(c)(1)(A)(i) conviction violates the Second Amendment. Because Cash did not raise this argument before the District Court, we review for plain error. See United States v. Payano, 930 F.3d 186, 191-92 (3d Cir. 2019). In reviewing for plain error, we must decide whether "(1) an error occurred, (2) the error is 'plain,' and (3) it 'affect[s] substantial rights.'"[4] Id. at 192 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). An error is "plain" where it is "clear" or "obvious." United States v. Scott, 14 F.4th 190, 198 (3d Cir. 2021) (quoting Olano, 507 U.S. at 734). A "perfectly analogous case" from our circuit is not required to show plain error, and a party may instead show an error is obvious where "the Courts of Appeals that have addressed the question have uniformly" supported a contrary result. Id. (citations omitted).

Cash was not convicted of possessing a firearm within his home for self-defense,

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] If these conditions are met, "a court of appeals should exercise its discretion to correct the error if it would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Payano, 930 F.3d 186, 192 (3d Cir. 2019) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

as he contends, but rather of possessing a firearm in his home "for purposes of assisting in, promoting, accomplishing, advancing or achieving the goal or objective of possession with intent to distribute" controlled substances. App. 208.[5] As explained below, it is neither clear nor obvious that the Second Amendment encompasses the right to possess a firearm for the purposes of assisting or carrying out a drug crime, or that a regulation barring such possession would be unconstitutional.[6]

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. To decide whether a firearm regulation is constitutional under the Second Amendment, courts first determine whether "the Second Amendment's plain text covers an individual's conduct." N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2129-30 (2022). If the conduct is covered, then the

---

[5] Relying on United States v. Dubin, 143 S. Ct. 1557 (2023), Cash asserts that the Government was not required to "establish any meaningful nexus" between his firearm possession and his drug trafficking activities, and therefore § 924(c), as applied to him, criminalized mere possession. Reply Br. at 13. However, this argument is undermined by the jury charge, which explicitly required the jury to find a nexus between his firearm possession and his drug trafficking activity.

[6] Cash asserts that he cannot be prohibited from possessing a firearm based on our holding in Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) (en banc), that all Americans are part of "the people" protected by the Second Amendment. Id. at 101. Range, however, focused on who could possess a firearm, whereas our focus here is on how a person may possess a firearm. See id. at 100, 103 (distinguishing among "'who,' 'what,' 'where,' 'when,' and 'how' restrictions" and considering separately whether Range was part of "the people" and whether his conduct was protected by the Second Amendment (citation omitted)). Thus, Range does not directly address the question in this case.

5

Government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2130.

In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court made clear that the Second Amendment right is "not unlimited," and explained that "we do not read the Second Amendment to protect the rights of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose." Id. at 595 (emphasis omitted). The Court further emphasized that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. Thus, the "central holding in Heller" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." McDonald v. City of Chicago, 561 U.S. 742, 780 (2010).

The Supreme Court continues to embrace this view. In Bruen, the Court repeated Heller's statements that the Second Amendment right is "not unlimited" and does not protect the right to keep and bear arms for "whatever purpose," 142 S. Ct. at 2128 (quoting Heller, 554 U.S. at 626), but instead is focused on "self-defense," id. at 2133. Bruen recognized that the right has historically been "subject to certain . . . restrictions," such as laws that "limited the intent for which one could carry arms." Id. at 2156. As such, Bruen further supports the conclusion that possession of a firearm in furtherance of

6

a drug crime is not covered by the text of the Second Amendment.

Based on these cases, circuit courts have repeatedly rejected Second Amendment challenges to § 924(c) and U.S.S.G. § 2D1.1(b)(1), a similar provision under the United States Sentencing Guidelines,[7] all concluding that the Second Amendment does not protect the right to possess a firearm for unlawful purposes. See, e.g., In re Terry, Nos. 22-13615-C, 2022 WL 20033240, at *2 (11th Cir. Nov. 14, 2022) (unpublished) (noting Bruen endorsed restrictions limiting the "intent for which one could carry arms," and concluding that Bruen's holding "relating to the rights of 'ordinary, law-abiding adult citizens' to carry handguns publicly for their self-defense" had "[no] bearing on § 924(c)'s prohibition on gun possession during a drug-trafficking crime" (citation omitted)); United States v. Burgess, No. 22-1110/22-1112, 2023 WL 179886, at *5 (6th Cir. Jan. 13, 2023) (nonprecedential) (rejecting post-Bruen Second Amendment challenge to § 924(c) because Bruen supported the conclusion that the Second Amendment "did not extend to possession of weapons for unlawful purposes" (citations omitted)); United States v. Bryant, 711 F.3d 364, 365-66 (2d Cir. 2013) (per curiam) (concluding, based on Heller, that "the Second Amendment does not safeguard the unlawful purpose of possessing a firearm in furtherance of drug trafficking" (emphasis omitted)); United States v. Greeno, 679 F.3d 510, 519-20 (6th Cir. 2012) (reviewing eighteenth- and

---

[7] U.S.S.G. § 2D1.1(b)(1) imposes a sentencing enhancement where a defendant commits a drug trafficking crime and a "dangerous weapon (including a firearm) was possessed."

nineteenth-century laws and concluding that the "historical understanding" of the right to keep and bear arms "did not extend to the possession of weapons for unlawful purposes").[8]

Because Cash possessed a firearm for the unlawful purpose of furthering his drug trafficking crimes, and courts have unanimously concluded that such conduct does not

---

[8] See also United States v. Potter, 630 F.3d 1260, 1261 (9th Cir. 2011) (per curiam) (rejecting Second Amendment challenge to § 924(c) because Heller "made clear that its holding concerned the lawful possession and use of a firearm" (emphasis omitted)); United States v. Jackson, 555 F.3d 635, 636 (7th Cir. 2009) (same); United States v. Angelos, 417 F. App'x 786, 801 (10th Cir. 2011) (nonprecedential) (same); United States v. Thorton, 395 F. App'x 574, 577 (11th Cir. 2010) (same); cf. United States v. Alaniz, 69 F.4th 1124, 1129-30 (9th Cir. 2023) (rejecting post-Bruen Second Amendment challenge to U.S.S.G. § 2D1.1(b)(1)); United States v. Napolitan, 762 F.3d 297, 311 (3d Cir. 2014) (stating the Second Amendment "does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits"); United States v. Moreno, 811 F. App'x 219, 224 (5th Cir. 2020) (nonprecedential) (rejecting Second Amendment challenge to U.S.S.G. § 2D1.1(b)(1)).

violate the Second Amendment, there was no plain error[9] in entering judgment against

Cash for violating § 924(c)(1)(A)(i).[10]

III

For the foregoing reasons, we will affirm.

---

[9] Judge Shwartz would hold there was no error, plain or otherwise, in allowing Cash's § 924(c) conviction to stand based both on the fact that Cash's conduct is not covered by the Second Amendment and, even if it was, there are relevantly similar historical regulations that demonstrate that § 924(c), as applied to Cash, is consistent with the Nation's tradition of firearm regulation. Bruen, 142 S. Ct. at 2130; see, e.g., 1783 Conn. Pub. Acts 633 (imposing enhanced penalties for committing burglary or robbery while armed, rather than unarmed); Laws Passed in the Territory of the United States North-West of the River Ohio from the Commencement of the Government to the 31st of December, 1791, at 19-20 (1792) (1788 statute imposing the same); Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, with the Constitutions of the United States of America, and of the Commonwealth, Prefixed 346 (1897) (1806 statute imposing the same); People v. Fellinger, 24 How. Pr. 341, 342 (N.Y. Gen. Term 1892) (citing similar 1828 New York statute); State v. Tutt, 63 Mo. 595, 599 (1876) (citing similar 1835 Missouri statute). These laws and § 924(c) impose comparable burdens on the right to armed self-defense and are comparably justified. Taking justification first, both § 924(c) and these historical laws seek to address the risk of violence that arises when a firearm is present during the commission of certain crimes. As to burden, both address this problem through identical means—enhanced criminal penalties—and impose a comparably minimal burden on the "right of armed self-defense," Bruen, 142 S. Ct. at 2133, by punishing possession related to criminal behavior, rather than lawful self-defense. Thus, these historical laws demonstrate that § 924(c) falls within a historical tradition of enhanced penalties for possessing a firearm in furtherance of a crime. See Alaniz, 69 F.4th at 1129 (9th Cir. 2023) (reviewing similar historical laws and concluding U.S.S.G. § 2D1.1(b)(1) "comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence"). As a result, Cash's § 924(c) conviction does not violate the Second Amendment.

[10] Because there was no plain error, we need not consider the third and fourth factors of the plain error test.

9