*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
———————

**UNITED STATES**
Appellee

**v.**

**Jakalien J. COOK, Airman**
United States Air Force, Appellant

**No. 24-0221**
Crim. App. No. 40333

Argued May 20, 2025—Decided August 28, 2025

Military Judges: Christopher D. James (Article 30a, UCMJ, proceedings) and Colin P. Eichenberger (trial)

For Appellant: *Captain Michael J. Bruzik* (argued); *Lieutenant Colonel Allen S. Abrams, Major Megan R. Crouch,* and *Major Matthew Blyth.*

For Appellee: *Captain Tyler L. Washburn* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel Jenny A. Liabenow,* and *Mary Ellen Payne,* Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

———————

Chief Judge OHLSON delivered the opinion of the Court.

We hold that an appellant's claim that a military judge incorrectly calculated the maximum authorized punishment for an offense—and thereby deprived the appellant of a fair sentencing proceeding—is subject to general waiver principles. We further hold that Appellant in the instant case waived such a claim at trial.

## Overview

Appellant was convicted, among other offenses, of one specification of illegal transportation of aliens[1] within the United States in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018). The parties agreed that because of the facts in this case, the charged offense carried a maximum penalty of twenty-five years of confinement. The military judge adopted this maximum penalty calculation and then sentenced Appellant to twenty-four months of confinement for this offense. On appeal to the United States Air Force Court of Criminal Appeals (CCA), Appellant argued that the military judge erred in his maximum punishment computation. *See United States v. Cook*, No. ACM 40333, 2024 CCA LEXIS 276, at *3, 2024 WL 3326992, at *1 (A.F. Ct. Crim. App. July 3, 2024) (unpublished). Appellant further asserted, among other challenges, that the evidence was factually insufficient to support his convictions surrounding his illegal transportation of aliens. *Id.* at *3-4; 2024 WL 3326992, at *1. The CCA rejected these contentions and affirmed. *Id.* at *4-5, *80, 2024 WL 3326992, at *2, *29.

This Court granted review of four issues:

> I. Whether Appellant's convictions for transporting aliens and conspiring to transport aliens are factually sufficient.

---

[1] "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3) (2018).

II. Whether the lower court erroneously interpreted and applied the amended factual sufficiency standard under Article 66(d)(1)(B), UCMJ.

III. Whether an appellant can waive the military judge's incorrect maximum punishment calculation that tripled Appellant's punitive exposure.

IV. Whether the military judge erred in calculating the maximum punishment for the offense of illegally transporting aliens as a violation of 8 U.S.C. § 1342.

*United States v. Cook*, 85 M.J. 336 (C.A.A.F. 2025) (order granting review).

Starting with Issue III, we hold that an accused can waive an objection to the military judge's maximum punishment calculation. Because we further hold that Appellant waived that objection in this case, Issue IV is moot. Upon turning to Issue I, we hold that in accordance with our recent decision in *United States v. Csiti*, No. 24-0175, 2025 CAAF LEXIS 349, at *7-8, 2025 WL 1374415, at *3-4 (C.A.A.F. May 8, 2025), this Court does not have the statutory authority to review the factual sufficiency of the evidence. We end with Issue II and hold that the CCA did not abuse its discretion in applying the amended factual sufficiency standard. We therefore affirm the CCA's decision.

## I. Background

The Government charged Appellant, an Airman (E-2) stationed at Davis-Monthan Air Force Base, Arizona, with one specification of conspiracy to transport aliens, one specification of absence without leave, one specification of breach of restriction, one specification of wrongful use of a controlled substance, one specification of obstruction of justice, one specification of illegal possession of a firearm, one specification of illegal possession of ammunition, and one specification of illegal transportation of aliens, in violation of Articles 81, 86, 87b, 112a, 131b, and 134, UCMJ, 10 U.S.C. §§ 881, 886, 887b, 912a, 931b, 934 (2018). He proceeded to a contested trial on the illegal possession of a firearm, illegal possession of ammunition, illegal

transportation of aliens, conspiracy to transport aliens, and obstruction of justice specifications.[2]

The focus of this appeal centers on the specification alleging that Appellant:

> did, within the State of Arizona, on or about 22 August 2021, transport [MFL], [ONA], [POM], [TMV], and [ONC] within the United States by means of [a] passenger vehicle, knowing or in reckless disregard that they were aliens that entered the United States in violation of the law, in violation of 8 United States Code § 1324, an offense not capital.

Because illegally transporting aliens within the United States is not an enumerated offense under the UCMJ, the Government charged Appellant under clause 3 of Article 134 with violating 8 U.S.C. § 1324(a)(1)(A)(ii) (2018), which criminalizes "transport[ing]" aliens within the United States. Relevant to this appeal, an individual who violates 8 U.S.C. § 1324(a)(1)(A)(ii) faces a maximum of five years of imprisonment "*for each alien* in respect to whom such a violation occurs." *Id.* § 1324(a)(1)(B) (emphasis added). As can be seen above, the specification at issue alleged that Appellant illegally transported five named aliens.

Before trial, the Government provided Appellant's defense counsel and the military judge with proposed instructions on the maximum punishment calculation for the Article 134 offense. This instruction stated that "the maximum penalty for this offense, under 8 U.S.C. § 1324(a)(1)(A)(ii), is no more than *five (5) years'* confinement *for each alien* in respect to whom such a violation occurs." (Emphasis added.) At trial, the military judge discussed the Government's proposed instructions with the parties, leading to the following exchange:

> [Military Judge]: I believe it is labeled or marked as, the Government's Proposed Instructions,

---

[2] Appellant was found guilty, consistent with his pleas, of the absence without leave, breach of restriction, and wrongful use of a controlled substance offenses.

> however, defense counsel, you did indicate through email that you agreed with those instructions and maximum sentences articulated. But just to have that on the record, is that accurate?
>
> [Defense Counsel]: That is accurate, Your Honor.
>
> [Military Judge]: Anything else we need to get on the record or handle before we recall the members?
>
> [Trial Counsel]: No, Your Honor.
>
> [Defense Counsel]: No, Your Honor.

A general court-martial composed of officer and enlisted members subsequently convicted Appellant, contrary to his pleas, of illegal transportation of aliens, conspiracy to transport aliens, and obstruction of justice.[3] Appellant chose military judge-alone sentencing. At sentencing, the military judge again addressed the maximum punishment calculation for Appellant's Article 134 offense. The military judge inquired what trial counsel was "relying upon for the maximum penalty" for this offense. Trial counsel explained that he calculated the maximum punishment of twenty-five years of confinement by adding together the five-year maximum periods of confinement applicable for each of the five aliens Appellant transported. The military judge asked Appellant's defense counsel if he agreed with that calculation, to which he responded "Yes, Your Honor."

The military judge then calculated a maximum punishment based on all of Appellant's offenses as "57 years and two months' confinement, dishonorable discharge, total forfeiture, and reduction to E-1." The military judge asked whether Appellant's defense counsel agreed with this calculation, to which he stated, "Yes, Your Honor." The military judge sentenced Appellant to a dishonorable discharge, confinement for twenty-seven months—which

---

[3] After the Government rested its case-in-chief, the military judge raised and granted sua sponte a Rules for Courts Martial (R.C.M.) 917 (2019 ed.) motion for findings of not guilty on the illegal possession of a firearm and illegal possession of ammunition specifications.

included twenty-four months for the Article 134 offense—forfeiture of all pay and allowances, and reduction in pay grade to E-1.

Despite his counsel's repeated agreement with the maximum penalty calculation at trial, Appellant appealed to the CCA arguing, among other things, that the military judge incorrectly calculated the maximum punishment for his Article 134 offense. *Cook*, 2024 CCA LEXIS 276, at *3, 2024 WL 3326992, at *1. (Appellant asserted before the CCA that the maximum punishment was actually five years of confinement rather than twenty-five years of confinement. *Id.* at *57, 2024 WL 3326992, at *20.) He further argued that his convictions were factually insufficient. *Id.* at *3, 2024 WL 3326992, at *1. As to Appellant's maximum punishment calculation claim, the CCA found that his "trial defense counsel's affirmative concurrence with the calculation at trial waived this issue." *Id.* at *59, 2024 WL 3326992, at *21. Turning to Appellant's contention that the evidence was factually insufficient, the CCA applied the recently amended version of Article 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B) (Supp. III 2019-2022). *Id.* at *21-22, 2024 WL 3326992, at *7-8.[4] The CCA explained that it "recently analyzed this new statutory standard for factual sufficiency in *United States v. Csiti*, No. ACM 40386, 2024 CCA LEXIS 160, (A.F. Ct. Crim. App. 29 Apr. 2024)" and would "adhere to the *Csiti* framework in analyzing and applying the new factual sufficiency standard." Applying this standard, the CCA rejected Appellant's assertion that the evidence was factually insufficient to support the guilty findings. *Cook*, 2024 CCA LEXIS 276, at *38-39, 2024 WL 3326992, at *13-14.

As stated above, this Court then granted review on issues regarding the maximum punishment calculation for Appellant's Article 134 offense and the factual sufficiency of his convictions. *Cook*, 85 M.J. at 336.

---

[4] We recently analyzed the amended Article 66 factual sufficiency standard in *United States v. Harvey*, 85 M.J. 127, 129-31 (C.A.A.F. 2024).

## II. Maximum Punishment Calculation Claims

Issues III and IV ask, respectively, whether an appellant can waive a military judge's incorrect maximum punishment calculation, and whether the military judge in this case erred in his maximum punishment calculation for the Article 134 offense. *Id.*

### A. Standard of Review

"We consider the issue of waiver as a question of law under a de novo standard of review." *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005).

### B. Waiver

" 'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Put differently, " '[a] forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law.' " *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). "While there are no 'magic words' dictating when a party has sufficiently raised an error to preserve it for appeal, of critical importance is the specificity with which counsel makes the basis for his position known to the military judge." *United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016) (citation omitted) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)).

"[W]e review forfeited issues for plain error," but "we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *United States v. Rich*, 79 M.J. 472, 476 (C.A.A.F. 2020) (internal quotation marks omitted) (citation omitted).

### C. Discussion

The core of Appellant's argument is that he could not, and therefore did not, waive his claim that the military

judge incorrectly calculated the maximum punishment for the Article 134 offense. Appellant grounds this argument on the assertion that the military judge's miscalculation of the maximum punishment "violated [his] right to a fair sentencing proceeding as prescribed by the U.C.M.J. and the Rules for Courts-Martial." Secondarily, Appellant argues that even if this claim was waivable, his defense counsel's actions at trial were not sufficient to "trigger" that waiver. As will be explained, we disagree with both arguments.[5]

### 1. A Maximum Punishment Calculation Error Claim Can Be Waived

We conclude that a maximum punishment calculation error claim is waivable. This conclusion is consistent with Supreme Court precedent establishing that "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995); *see also Peretz v. United States*, 501 U.S. 923, 936 (1991) (recognizing that "[t]he most basic rights of criminal defendants are . . . subject to waiver"). The Supreme Court has applied this "general rule" in finding that appellants waived a broad array of constitutional claims. *New York v. Hill*, 528 U.S. 110, 114 (2000).[6]

---

[5] Appellant also contends the Government failed to properly allege a violation of 8 U.S.C. § 1324 through clause 3 of Article 134 because the specification omitted an element for an offense under 8 U.S.C. § 1324(a)(1)(A)(ii) and the specification did not allege a clause 1 or clause 2 Article 134 offense without the terminal element. Because this Court did not grant review on the question of the specification's alleged omission of a § 1324 element or an Article 134 terminal element, "this assertion lies outside the scope of the granted issue[s], and we decline to discuss it further." *United States v. Wilson*, 84 M.J. 383, 389 (C.A.A.F. 2024). To the extent that Appellant claims that the omission of an element is jurisdictional, we rejected this position in *United States v. Humphries*, 71 M.J. 209, 212-14 (C.A.A.F. 2012).

[6] *See, e.g.*, *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense); *United States v. Gagnon*, 470 U.S. 522, 528 (1985) (right to be present at all stages of criminal trial); *Boykin*

While the general rule presuming the availability of waiver is broad, it is not without limitations. *See United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) ("No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept."). But these limits "are narrow and relate to situations in which, on its face, the prosecution may not constitutionally be maintained," *United States v. Bradley*, 68 M.J. 279, 282 (C.A.A.F. 2010), thereby leaving a court with "no power to enter the conviction or impose the sentence" in the first place. *United States v. Broce*, 488 U.S. 563, 569 (1989). For example, this Court has held that an appellant cannot " 'waive his right to appeal a sentence that is unlawful because it exceeds the statutory maximum.' " *United States v. Dinger*, 77 M.J. 447, 452 (C.A.A.F. 2018) (quoting *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009)).

Against this backdrop, there is an insufficient basis to exclude from the general waiver rule Appellant's claim that the military judge incorrectly calculated the maximum authorized punishment. As Appellant concedes in his brief, even if the military judge erred in his maximum punishment calculation, Appellant still received a sentence within the statutorily authorized limits. And considering this Court has previously held that appellants can waive challenges to issues as significant as a military judge's failure to include key elements in his panel instructions, we do not see an adequate reason to handle Appellant's claim

---

*v. Alabama*, 395 U.S. 238, 243 (1969) (privilege against compulsory self-incrimination, right to jury trial, and right to confront one's accusers); *Levine v. United States*, 362 U.S. 610, 619 (1960) (closure of courtroom and right to public trial); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *Segurola v. United States*, 275 U.S. 106, 111 (1927) (right against unlawful search and seizure).

differently. *See Rich*, 79 M.J. at 475-76; *United States v. Smith*, 2 C.M.A. 440, 442, 9 C.M.R. 70, 72 (1953).

Appellant also argues that as a matter of binding precedent, we are compelled to conclude that Appellant could not waive his claim regarding the military judge's incorrect calculation of the maximum authorized punishment. In doing so, he primarily relies on *United States v. Harden*, 1 M.J. 258 (C.M.A. 1976), and claims that "[t]his Court held that a challenge to [this type of] miscalculation could not be waived." We disagree, however, with the assertion that *Harden*—or any of our other precedents—sets forth a blanket prohibition against waivers of this nature. We note preliminarily that in *Harden* this Court discussed how the degree of miscalculation must be "substantial" and its effects must be "material" in order for such a claim to be deemed nonwaivable. *Id.* at 259-60. But more importantly for the purposes of this appeal, *Harden* is distinguishable from the instant case for one fundamental reason: *Harden* involved a guilty plea and the offense at issue in Appellant's case does not. And the explicit holding in *Harden* was that "a *plea of guilty* may be *improvident* because it is 'predicated upon a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject.'" *Id.* at 259 (emphasis added) (citations omitted). In other words, the *Harden* court declined to find waiver on the part of the appellant when there was a substantial and material discrepancy between the actual maximum authorized punishment and the improperly calculated maximum authorized punishment because implicit in a plea agreement is that an accused understands and accepts the consequences of the agreement's essential terms. *Id.* at 260. This understanding and acceptance were absent from the agreement in *Harden* because the large discrepancy between the actual maximum term of confinement and the miscalculated maximum term of confinement undermined the conclusion that the appellant made a deliberate, intelligent choice between available alternatives in entering the plea. *Id.* These concerns obviously are not present in the instant case

where Appellant opted for a contested trial on the Article 134 offense.

### 2. Appellant's Claim About an Incorrect Calculation of the Maximum Authorized Punishment Does Not Implicate His Due Process Rights

Appellant further argues that his claim that the military judge incorrectly calculated his maximum authorized punishment implicates his fundamental due process right to a fair sentencing process. Accordingly, he asserts that even if his claim in this case is deemed waivable, this Court must apply the heightened standard applicable to constitutional rights when deciding whether waiver actually occurred. *See Jones*, 78 M.J. at 44. Specifically, Appellant states: "Fundamental rights cannot be waived through counsel's lack of objection, but require that the record show the accused understood the right at issue and intentionally waived it."

In pursuing this argument, Appellant likens the military judge's alleged incorrect calculation of the maximum authorized punishment in the instant case to a district court judge's mistaken computation of the appropriate United States Sentencing Guidelines (hereinafter the Guidelines) range in a federal civilian case.[7] And in *Molina-Martinez v. United States*, the Supreme Court held that a miscalculation of the applicable range under the Guidelines "itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 578 U.S. 189, 198 (2016).

We note, however, that the Supreme Court's holding in *Molina-Martinez* rested on the "centrality of the Guidelines in the sentencing process," and the fact that the Guidelines range has a "real and pervasive effect" upon the ultimate sentence imposed. *Id.* at 199-200. In contrast, "[u]nlike the Guidelines, which district courts are required to use as the 'starting point' for sentencing, to 'remain cognizant of . . .

---

[7] *See, e.g.*, U.S. Sent'g Comm'n, Guidelines Manual § 3E1.1 (2024).

throughout the sentencing process,' and to 'explain the decision to deviate from,' statutory ranges merely set the floor and the ceiling within which a district court must sentence." *United States v. Payano*, 930 F.3d 186, 194 (3d Cir. 2019) (alteration in original) (quoting *Molina-Martinez*, 578 U.S. at 198-99). As can be seen then, federal circuit courts have recognized that a statutory maximum calculation does not have the same practical effect in the sentencing process as a Guidelines computation. Accordingly, they have uniformly declined to extend the presumption of prejudice applicable to an erroneous calculation of the Guideline range to those cases involving an erroneous calculation of the statutory maximum penalty. *See, e.g., United States v. Dominguez*, 128 F.4th 226, 233 (4th Cir. 2025); *United States v. Calderon-Padilla*, 136 F.4th 1270, 1274 (10th Cir. 2025); *Payano*, 930 F.3d at 193-96; *United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013). Put simply, the "Guidelines range and a statutory range do not have commensurate effects on the final sentence imposed." *Payano*, 930 F.3d at 194.

This legal distinction made in federal civilian courts is particularly apt in the military justice context. It is important to note that the *Manual for Courts-Martial* explicitly states how a military judge must decide upon a punishment to impose—and there is no mention whatsoever of the statutory maximum punishment. Specifically, Article 56(c)(1), UCMJ, 10 U.S.C. § 856(c)(1) (2018), provides that a "court-martial shall impose punishment that is sufficient, *but not greater than necessary*, to promote justice and to maintain good order and discipline in the armed forces." (Emphasis added.); *see also* R.C.M. 1002(f)(3) (2019 ed.) (stating the same).[8] Thus, rather than directly affecting

---

[8] This process is consistent with R.C.M. 1006(d)(3)(A) (2019 ed.) which is applicable to member sentencing and provides that any member may propose a sentence for the panel's consideration, and the order for these proposals "begin[s] with the least severe" and "continu[es], as necessary, with the next least severe" until a sentence is adopted. (We note that members sentencing is being phased out of the military justice system in

how a military judge settles upon an appropriate penalty to impose, the statutory maximum authorized punishment instead serves to "delineate the outer bounds of the [judge's] discretion in imposing a penalty." *McCloud*, 730 F.3d at 603. And in the instant case, the military judge's adjudged sentence of twenty-four months of confinement for the Article 134 offense did not approach the maximum authorized punishment of five years which Appellant now contends was the correct calculation.

Accordingly, we conclude that Appellant's claim does not implicate his due process rights because the correctness of the military judge's maximum punishment calculation did not inherently undermine the fairness of the sentencing process.

### 3. Appellant Waived His Maximum Punishment Calculation Challenge

Because the military judge's maximum punishment calculation did not implicate Appellant's fundamental rights, waiver of this claim could be "effected by action of [his] counsel." *Hill*, 528 U.S. at 114. And the record demonstrates that Appellant's defense counsel affirmatively waived any claim of error regarding this issue.[9]

---

noncapital cases. Congress recently amended Article 53, UCMJ, 10 U.S.C. § 853 (2018), to provide for military judge-alone sentencing in such cases. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(a), (f), 135 Stat. 1541, 1700, 1706 (2021) (providing that the provisions regarding military judge-alone sentencing "shall apply to sentences adjudged in cases in which all findings of guilty are for offenses that occurred after the date that is two years after the date of the enactment of [the] Act").)

[9] Appellant alternatively contends this Court should decline finding waiver because the "underlying issue of how the maximum sentence should be calculated" is unsettled law. But Appellant's approach ignores that the focus of waiver is on the nature of the right relinquished, *Hill*, 528 U.S. at 114, and not the merits of the underlying claim based on the state of the law. *See United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000) ("The whole point of waiver . . . is the relinquishment of claims

The first time the parties discussed the maximum punishment calculation, the military judge asked Appellant's defense counsel whether the Government's proposed sentencing "instructions and maximum sentences" were "accurate," and he responded, "That is accurate, Your Honor."

The second time the parties discussed the maximum punishment calculation was in the context of trial counsel stating that Appellant's maximum punishment for his Article 134 offense was twenty-five years of confinement because he transported five aliens. The military judge asked Appellant's defense counsel if he agreed with this calculation to which he replied, "Yes, Your Honor."

The parties then discussed the maximum punishment computation for all of Appellant's offenses. Trial counsel proffered, and Appellant's defense counsel agreed, that the punishment would be "57 years and two months' confinement." (Subsumed within this general calculation was the maximum penalty for Appellant's Article 134 offense.)

Taken together, Appellant's defense counsel not only failed to object to the maximum punishment calculation, at multiple points he affirmatively *agreed* with the proposed calculation adopted by the military judge. This Court has recognized that a trial defense counsel's agreement is akin to a statement of "no objection," which is sufficient to constitute affirmative waiver. *See United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019); *see also United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) ("An attorney cannot agree in open court with a judge's proposed course of

regardless of their merit."). Contrary to Appellant's view, "we should expect counsel to object when the law is unsettled and a certain interpretation is favorable to their client." *United States v. Oliver*, 76 M.J. 271, 276 (C.A.A.F. 2017) (Stucky, C.J., concurring in the result). Because an erroneous maximum punishment calculation is waivable, our inquiry solely concerns whether defense counsel preserved the issue. *See United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999) ("A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error.").

conduct and then charge the court with error in following that course."). Therefore, the record supports the conclusion that Appellant, through his defense counsel, affirmatively abandoned any claim regarding the maximum sentence computation, thereby waiving the issue on appeal before this Court. *Campos*, 67 M.J. at 332. And because of this waiver, we cannot review the question of whether the military judge actually erred in his maximum punishment calculation. *Rich*, 79 M.J. at 476.

## III. Factual Sufficiency Challenges

This Court also granted review of two issues related to whether Appellant's convictions were factually sufficient for the offenses of illegally transporting aliens within the United States and conspiracy to commit the same. In accordance with our decision in *Csiti*, 2025 CAAF LEXIS 349, at *7-8, 2025 WL 1374415, at *3-4, we hold that this Court does not have the statutory authority to review the factual sufficiency of the evidence, so we cannot answer Issue I. As for the lower court's application of the amended factual sufficiency standard, the CCA explained that it would "adhere to the *Csiti* framework in analyzing and applying the new factual sufficiency standard." *Cook*, 2024 CCA LEXIS 276, at *22, 2024 WL 3326992, at *8. Therefore, we reach the same conclusion as we did in *Csiti*: there is "nothing to indicate an abuse of discretion by the [CCA] in determining what deference to give the court-martial with respect to any of the evidence." *Csiti*, 2025 CAAF LEXIS 349, at *13-14, 2025 WL 1374415, at *5. Accordingly, because the CCA did not err in its factual sufficiency review, Appellant is not entitled to relief on Issue II.

## IV. Conclusion

We answer Issue III in the affirmative and therefore hold that Issue IV is moot because Appellant's waiver leaves us with no error to correct on appeal. We do not answer Issue I, and we answer Issue II in the negative. Accordingly, the decision of the United States Air Force Court of Criminal Appeals is affirmed.